# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **Valtrus Innovations Ltd.** § § § | |
| **Plaintiff** § § | |
| v. § § | CIVIL ACTION NO. 2:24cv21 |
| § § | |
| **SAP America, Inc. and SAP, SE.** § § | JURY TRIAL DEMANDED |
| § | |
| **Defendants.** | |

## COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff Valtrus Innovations Limited ("Plaintiff" or "Valtrus"), by and through its undersigned counsel, brings this complaint for patent infringement and damages against Defendants SAP America, Inc. and SAP, SE (together, "SAP" or "Defendants") and would respectfully show the Court as follows:

## PARTIES

1. Valtrus is the successor-in-interest to a substantial patent portfolio created by Hewlett Packard Enterprise and its predecessor, subsidiary, and affiliate companies (collectively, "HPE"). Valtrus is an Irish entity duly organized and existing under the laws of the Republic of Ireland. The address of the registered office of Valtrus is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.  HPE's worldwide corporate headquarters is located in Houston, Texas.  One of HPE's primary US facilities is located in Plano, Texas.

2. On information and belief, Defendant SAP America, Inc. ("SAP America") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 3999 West Chester Pike, Newton Square, Pennsylvania 19073. SAP has a regular and established place of business at 7500 Windrose Avenue, Suite 250, Plano, Texas 75024. On information and belief, SAP America may be served with process through its registered agent at CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas, 75201.

3. On information and belief, Defendant SAP, SE is a corporation duly organized and existing under the laws of Germany with a place of business at Dietmar-Hopp-Allee 16, Walldorf, Baden-Wurttemberg, 69190. On information and belief, SAP America is a subsidiary of SAP, SE.

4. On information and belief, Defendant SAP, SE and/or its employees or officers direct and/or control the actions of its direct and indirect subsidiaries. On information and belief, SAP, SE and/or its employees or officers direct and/or control the actions of these entities by, for example, inducing and contributing to the actions complained of herein.

## PATENTS IN SUIT

5. Valtrus is the assignee of and owns all right and title to U.S. Patent Nos. 6,823,409 (the "'409 Patent"); 6,889,244 (the "'244 Patent"); 7,152,182 (the "'182 Patent"); 7,313,575 (the "'575 Patent"); 6,691,139 (the "'139 Patent"); 7,936,738 (the "'738 Patent"), and 6,871,264 (the "'264 Patent") (collectively, "the Asserted Patents").

6. The Asserted Patents were developed by inventors working for HPE. HPE developed numerous innovative and diverse technologies, including groundbreaking inventions pertaining to database replication, redundancy, and failover techniques; data integration

techniques; fault tolerant data communication techniques; and multi-processor integrated circuit designs.

7. The '409 Patent, entitled Coherency Control Module for Maintaining Cache Coherency in a Multi-Processor-Bus System, was duly and lawfully issued on November 23, 2004. A true and correct copy of the '409 Patent is attached hereto as Exhibit 1.

8. The '409 Patent was in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '409 Patent, including the right to seek damages for any infringement thereof.

9. The '244 Patent, entitled Method and Apparatus for Passing Messages Using a Fault Tolerant Storage System, was duly and lawfully issued on May 3, 2005. A true and correct copy of the '244 Patent is attached hereto as Exhibit 2.

10. The '244 Patent was in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '244 Patent, including the right to seek damages for any infringement thereof.

11. The '182 Patent, entitled Data Redundancy System and Method, was duly and lawfully issued on December 19, 2006. A true and correct copy of the '182 Patent is attached hereto as Exhibit 3.

12. The '182 Patent has been in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '182 Patent, including the right to seek damages for any infringement thereof.

13. The '575 Patent, entitled Data Services Handler, was duly and lawfully issued on December 25, 2007. A true and correct copy of the '575 Patent is attached hereto as Exhibit 4.

14. The '575 Patent has been in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '575 Patent, including the right to seek damages for any infringement thereof.

15. The '139 Patent, entitled Recreation of Archives at a Disaster Recovery Site, was duly and lawfully issued on February 10, 2004. A true and correct copy of the '139 Patent is attached hereto as Exhibit 5.

16. The '139 Patent was in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '139 Patent, including the right to seek damages for any infringement thereof.

17. The '738 Patent, entitled Fault Tolerant Systems, was duly and lawfully issued on May 3, 2011. A true and correct copy of the '738 Patent is attached hereto as Exhibit 6.

18. The '738 Patent has been in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '738 Patent, including the right to seek damages for any infringement thereof.

19. The '264 Patent, entitled System and Method for Dynamic Processor Core and Cache Partitioning on Large-Scale Multithreaded, Multiprocessor Integrated Circuits, was duly and lawfully issued on March 22, 2005. A true and correct copy of the '264 Patent is attached hereto as Exhibit 7.

20. The '264 Patent was in full force and effect since its issuance. Valtrus owns by assignment the entire right and title in and to the '264 Patent, including the right to seek damages for any infringement thereof.

**JURISDICTION AND VENUE**

21. Valtrus incorporates by reference paragraphs 1-20 herein.

22. This civil action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, *inter alia*, 28 U.S.C. §§ 1331, 1332, and 1338(a).

23. This District has general and specific personal jurisdiction over Defendants because, directly or through intermediaries, Defendants have committed acts within this District giving rise to this action; are present in and transact and conduct business, directly, and/or indirectly, in this District and the State of Texas; and transact and conduct business with residents of this District and the State of Texas.

24. Valtrus's causes of action arise, at least in part, from Defendants' contacts with and activities in and/or directed at this District and the State of Texas.

25. Defendants have infringed the Asserted Patents within this District and the State of Texas by making, using, selling, licensing, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services covered by claims in the Asserted Patents, including without limitation products that, when made or used, practice the claimed methods of the Asserted Patents. Defendants, directly and through intermediaries, make, use, sell, license, offer for sale, import, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products and services in or into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

26. This Court has personal jurisdiction over Defendants pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*

27. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

28. Defendants are doing business, either directly or through respective agents, on an ongoing basis in this Judicial District and elsewhere in the United States, and have committed acts of infringement in this district. SAP America has a regular and established place of business in this Judicial District including: 7500 Windrose Avenue, Suite 250, Plano, Texas 75024.  On information and belief, each Defendant makes, uses, sells, offers to sell, and/or imports infringing products into and/or within this District, maintains a permanent and/or continuing presence within this District, and has the requisite minimum contacts with this District such that this venue is a fair and reasonable one.  Upon information and belief, each Defendant has transacted and, at the time of the filing of the Complaint, is continuing to transact business within this District.

29. Venue is further proper in this District over SAP, SE because it is a foreign corporation.

## FIRST CLAIM

### (Infringement of the '409 Patent)

30. Valtrus re-alleges and incorporates herein by reference paragraphs 1-29 of its Complaint.

31. The '409 Patent is generally directed to a multi-processor-bus memory system and an efficient mechanism for filtering processor cache snoops in a multi-processor-bus system.

32. Defendants have been on notice of the '409 Patent and a specific factual basis for their infringement of the '409 Patent since at least on or about March 4, 2022.  On information and belief, Defendants did not take any action to stop their infringement.

33. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 10 of the '409 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware

and/or software including components for a coherency control module configured to control access to cache memory in a computer system (excluding any products licensed under the '409 Patent). For example, SAP makes, uses, tests, operates, sells, licenses, offers for sale, and/or imports hardware and/or software for a coherency control module as part of its SAP HANA products. An exemplary claim chart concerning one way in which SAP infringes claim 10 of the '409 Patent is attached as Exhibit 8.

34. Defendants have also indirectly infringed the '409 Patent under 35 U.S.C. § 271(b) and (c).

35. Defendants have knowingly and intentionally actively aided, abetted, and induced others to directly infringe at least claim 10 of the '409 Patent (such as their customers in this District and throughout the United States) by, for example, advertising to customers and encouraging them to use SAP's HANA products and services because of their scalability, availability, reliability, performance, and capacity. SAP further advertises that its cloud and hybrid model HANA offerings provide high-performance solutions with flexibility to grow and change with the customer's needs.

36. Defendants have contributed to the direct infringement of at least claim 10 of the '409 Patent under 35 U.S.C. § 271(c) by supplying, with knowledge of the '409 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants have provided, owned, operated, sold, offered to sell, leased, licensed, used, and/or imported various hardware and software enabling services that enable the maintenance of ordering of requests from multiple cores in a multi-core processor to a shared cache and the prevention of multiple simultaneous access to a single address in the cache (such as that shown in Exhibit 8) that are not a staple article of commerce and are incapable of substantial noninfringing use. Additionally, SAP has provided,

owned, operated, sold, offered to sell, leased, used, and/or imported various hardware and software enabling services that utilize AMD processors with "Zen 2" and "Zen 3" architectures (*e.g.*, AMD EPYC processors), which, when used, form a material part of the invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use.

37. Defendants' infringement has been willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## SECOND CLAIM

**(Infringement of the '244 Patent)**

38. Valtrus re-alleges and incorporates herein by reference paragraphs 1-37 of its Complaint.

39. The '244 Patent is generally directed to a messaging architecture wherein messages are transmitted over the interconnection fabric of a fault tolerant storage system and are stored within the fault tolerant storage system.

40. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '244 Patent, by making, using, testing, selling, leasing, licensing, offering for sale, and/or importing hardware and software that integrates various systems, applications, and data sources, and provides the capabilities to transmit, store, and process messages using a fault tolerant storage system (FTSS) and highly reliable fault tolerant storage media therein (excluding any products licensed under the '244 Patent).  An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '244 Patent is attached as Exhibit 9.

## THIRD CLAIM

### (Infringement of the '182 Patent)

41. Valtrus re-alleges and incorporates herein by reference paragraphs 1-40 of its Complaint.

42. The '182 Patent is generally directed to systems and methods for redundant data storage.

43. Defendants have been on notice of the '182 Patent and a specific factual basis for their infringement of the '182 Patent since at least on or about November 14, 2023. On information and belief, Defendants have not taken any action to stop their infringement.

44. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '182 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software for a data redundancy system, for example, that enable the storage of data in a primary storage facility with first and second redundancy appliances (where the second shadows the first) and redundant data in a secondary storage facility with third and fourth redundancy appliances (where the fourth shadows the third) (excluding any products licensed under the '182 Patent). An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '182 Patent is attached as Exhibit 10.

45. Defendants have also indirectly infringed, and continue to indirectly infringe, the '182 Patent under 35 U.S.C. § 271(b) and (c).

46. Defendants knowingly, intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '182 Patent, and continue to do so, by, for example, selling and offering access to (and encouraging use of) hardware and/or software for a data redundancy system, that, for example, enable the storage of data in a primary storage facility with first and

second redundancy appliances (where the second shadows the first) and redundant data in a secondary storage facility with third and fourth redundancy appliances (where the fourth shadows the third). For instance, SAP advertises that system replication ensures high availability and facilitates rapid failover. *See* Exhibit 10.

47. Defendants contribute to the direct infringement of at least claim 1 of the '182 Patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the '182 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, lease, and/or import various hardware and software for a data redundancy system, for example, enabling the storage of data in a primary storage facility with first and second redundancy appliances (where the second shadows the first) and redundant data in a secondary storage facility with third and fourth redundancy appliances (where the fourth shadows the third) (such as that shown in Exhibit 10) that are not a staple article of commerce and are incapable of substantial noninfringing use.

48. Defendants' infringement has been willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## FOURTH CLAIM

**(Infringement of the '575 Patent)**

49. Valtrus re-alleges and incorporates herein by reference paragraphs 1-48 of its Complaint.

50. The '575 Patent is generally directed to systems and methods for a data services handler, including a data services handler comprising a real time information director (RTID) that

transforms data under direction of polymorphic meta data that defines a security model and data integrity rules for application to the data.

51. Defendants have been on notice of the '575 Patent and a specific factual basis for their infringement of the '575 Patent since at least on or about November 14, 2023. On information and belief, Defendants did not take any action to stop their infringement.

52. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, and continue to directly infringe, one or more claims, including without limitation at least claim 1 of the '575 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software that enables integration of data from multiple sources through real-time data transforms (excluding any products licensed under the '575 Patent). An exemplary claim chart concerning one way in which SAP infringed claim 1 of the '575 Patent is attached as Exhibit 11.

53. Defendants have also indirectly infringed, and continue to indirectly infringe, the '575 Patent under 35 U.S.C. § 271(b) and (c).

54. Defendants knowingly and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '575 Patent (such as their customers in this District and throughout the United States), and continue to do so, by, for example, selling and offering access to (and encouraging use of) hardware and/or software that enables integration of data from multiple sources through real-time data transforms. For instance, SAP advertises that SAP Data Services provides data integration using relational datastores for real time data transformation and access. *See* Exhibit 11.

55. Defendants contributed to the direct infringement of at least claim 1 of the '575 Patent under 35 U.S.C. § 271(c), and continue to do so, by, for example, supplying, with knowledge of the

'575 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, lease, and/or import various hardware and software enabling integration of data from multiple sources through real-time data transforms (such as that shown in Exhibit 11) are a material part of the claimed invention, are not a staple article of commerce, and are incapable of substantial non-infringing uses.

56. Defendants' infringement has been willful in view of the above, and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

### FIFTH CLAIM

**(Infringement of the '139 Patent)**

57. Valtrus re-alleges and incorporates herein by reference paragraphs 1-56 of its Complaint.

58. The '139 Patent is generally directed to systems and methods for disaster recovery for online computer systems, including the creation of a standby data processing site at a remote location using reduced communication bandwidth mirroring.

59. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '139 Patent, by using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software that enables system replication using delta data shipping that produces a delta image at a primary site and combines it with an active transaction redo lag at a standby site to produce a standby archive transaction redo log (excluding any products licensed under the '139 Patent). An exemplary claim chart concerning one way in which SAP infringed claim 1 of the '139 Patent is attached as Exhibit 12.

**SIXTH CLAIM**

**(Infringement of the '738 Patent)**

60. Valtrus re-alleges and incorporates herein by reference paragraphs 1-59 of its Complaint.

61. The '738 Patent is generally directed to systems and methods for fault tolerant systems, including for providing fault tolerance in, for example, message-based communication system.

62. Defendants have been on notice of the '738 Patent and a specific factual basis for their infringement of the '738 Patent since at least on or about November 14, 2023. On information and belief, Defendants have not taken any action to stop their infringement.

63. Defendants have, under 35 U.S.C. § 271(a), directly infringed, and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '738 Patent, by making, using, testing, selling, leasing, offering for sale, and/or importing hardware and/or software that enables information exchange between nodes using Kafka messages for data streaming (excluding any products licensed under the '738 Patent). An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '738 Patent is attached as Exhibit 13.

64. Defendants also indirectly infringed, and continue to indirectly infringe, the '738 Patent under 35 U.S.C. § 271(b) and (c).

65. Defendants knowingly and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '738 Patent (such as customers in this District and throughout the United States), and continue to do so, by, for example, selling and offering access to (and encouraging use of) hardware and/or software that enables information exchange between nodes using Kafka messages for data streaming. *See* Exhibit 13. For instance, SAP advertises that external events from SAP Business Network Asset Collaboration enable customers to

receive notifications for supported object types that they have access to when they undergo any changes/updates, which allows third party applications hosted by customers on SAP Cloud Platform to consume these events by subscribing to a dedicated Kafka topic. *See* Exhibit 13.

66. Defendants contributed to the direct infringement of at least claim 1 of the '738 Patent under 35 U.S.C. § 271(c), and continue to do so, by supplying, with knowledge of the '738 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants provide, own, operate, sell, offer to sell, lease, and/or import various hardware and software enabling information exchange between nodes using Kafka messages for data streaming (such as that shown in Exhibit 13) are a material part of the claimed invention, are not a staple article of commerce, and are incapable of substantial non-infringing uses.

67. Defendants' infringement has been willful in view of the above and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

## SEVENTH CLAIM

**(Infringement of the '264 Patent)**

68. Valtrus re-alleges and incorporates herein by reference paragraphs 1-67 of its Complaint.

69. The '264 Patent is generally directed to an apparatus and method for dynamically repartitioning multiple CPU integrated circuits so that critical-path threads may receive needed resources and system performance may thereby be optimized.

70. Defendants have been on notice of the '264 Patent and a specific factual basis for their infringement of the '264 Patent since at least on or about March 4, 2022. On information and belief, Defendants have not taken any action to stop their infringement.

71. Defendants have, under 35 U.S.C. § 271(a), directly infringed, literally and/or under the doctrine of equivalents, one or more claims, including without limitation at least claim 1 of the '264 Patent, by making, using, testing, selling, offering for sale, and/or importing hardware and/or software including components for a multi-processor integrated circuit capable of executing more than one instruction stream (excluding any products licensed under the '264 Patent). An exemplary claim chart concerning one way in which SAP infringes claim 1 of the '264 Patent is attached as Exhibit 14.

72. Defendants also indirectly infringed the '264 Patent under 35 U.S.C. § 271(b) and (c).

73. Defendants knowingly and intentionally actively aided, abetted, and induced others to directly infringe at least claim 1 of the '264 Patent (such as customers in this District and throughout the United States) by, for example, advertising to customers and encouraging them to use SAP's HANA products and services because of their scalability, availability, reliability, performance, and capacity, as well as use of AMD processors (*e.g.*, AMD EPYC processors). SAP further advertises that its cloud and hybrid model HANA offerings provide high-performance solutions with flexibility to grow and change with the customer's needs, including with such processors. *See* Exhibit 14.

74. Defendants contributed to the direct infringement of at least claim 1 of the '264 Patent under 35 U.S.C. § 271(c) by supplying, with knowledge of the '264 Patent, a material part of a claimed invention, where the material part is not a staple article of commerce and is incapable of substantial noninfringing use. For example, Defendants have provided, owned, operated, sold, offered to sell, leased, licensed, used, and/or imported various hardware and software that utilize a multi-processor integrated circuit capable of executing more than one instruction stream (such as that shown in Exhibit 14) that are not a staple article of commerce and are

incapable of substantial noninfringing use. Additionally, SAP has provided, owned, operated, sold, offered to sell, leased, used, and/or imported various hardware and software enabling services that utilize AMD processors with "Zen 2" and "Zen 3" architectures (*e.g.*, AMD EPYC processors), which, when used, form a material part of the invention, where the material part is not a staple article of commerce and is incapable of substantial non-infringing use.

75. Defendants' infringement has been willful in view of the above and their failure to take any action, even after being put on notice, to stop their infringement or inducement of, or contribution to, infringement by others.

**PRAYER FOR RELIEF**

WHEREFORE, Valtrus prays for judgment against SAP as follows:

A. That SAP has infringed each of the Asserted Patents, and unless enjoined, will continue to infringe one or more of the applicable Asserted Patents;

B. That SAP's infringement of one or more of the applicable Asserted Patents has been willful;

C. That SAP pay Valtrus damages adequate to compensate Valtrus for SAP's past infringement of each of the Asserted Patents, and present and future infringement of the applicable Asserted Patents, together with interest and costs under 35 U.S.C. § 284;

D. That SAP pay prejudgment and post-judgment interest on the damages assessed;

E. That SAP pay Valtrus enhanced damages pursuant to 35 U.S.C. § 284;

F. That SAP be enjoined from infringing the applicable Asserted Patents, or if its infringement is not enjoined, that SAP be ordered to pay ongoing royalties to Valtrus for any post-judgment infringement of the applicable Asserted Patents;

G. That this is an exceptional case under 35 U.S.C. § 285; and that SAP pay Valtrus's attorneys' fees and costs in this action; and

H. That Valtrus be awarded such other and further relief, including equitable relief, as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Valtrus hereby demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

*/s/ Matthew G. Berkowitz by permission Claire Henry*
Matthew G. Berkowitz – LEAD ATTORNEY
Patrick Colsher
Savannah H. Carnes
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
scarnes@reichmanjorgensen.com

Philip J. Eklem
peklem@reichmanjorgensen.com
Reichman Jorgensen Lehman & Feldberg LLP
1909 K Street NW, Suite 800
Washington DC, 20006
Tel: (202) 894-7310

Khue V. Hoang
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

*Of Counsel:*

Andrea L. Fair
Texas Bar No. 24078488
Claire Abernathy Henry
Texas State Bar No. 24053063

WARD, SMITH & HILL, PLLC
1507 Bill Owens Pkwy.
Longview, TX 75604
Tel: (903) 757-6400
andrea@wsfirm.com
claire@wsfirm.com

*Attorneys for Plaintiff*