# Exhibit AE

property in good faith. Thirdly, the trust property is a *fund*, in the sense that the trustees have power to sell its constituent parts free of the beneficiaries' proprietary rights, and reinvest the proceeds in other assets, which thereupon automatically become subject to those rights. The unique feature of this "real subrogation" in the case of a trust is that, if the trustees *wrongfully* transpose trust assets into other assets, the beneficiaries' proprietary interests attach to the new assets, and bind them, not only in the hands of the trustees, their creditors and successors, but also in the hands of third parties generally other than *bona fide* purchasers for value without notice.

## 2.   CLASSIFICATION OF TRUSTS

### Bare or simple trusts and special trusts

A distinction has traditionally been drawn between "bare" trusts, or "simple" or "naked" trusts, and "special" trusts. According to that distinction, a bare trustee holds property in trust for a single beneficiary absolutely and indefeasibly, and is a mere passive repository for the beneficial owner, having no duties other than a duty to transfer the property to the beneficial owner or as he directs. By contrast a trustee holding property on special trusts has active duties to perform, for example in executing the trusts of a will or settlement, with administrative (and perhaps also dispositive) powers accompanying his active duties. It is still possible to distinguish between an absolute trust for a single beneficiary, which might still be called a bare or simple trust, and other types of trust. On closer examination, however, a distinction cannot satisfactorily be drawn between bare and special trusts on the basis that a person holding property on trust for another absolutely and indefeasibly is always a mere passive repository for the beneficial owner while a trustee holding property on special trusts has active duties to perform. The description of a bare trustee as a mere passive repository for the beneficial owner with no active duties to perform other than a duty of transfer requires at least some qualification in its application to cases where a beneficiary has an absolute and indefeasible interest. We consider later in this Chapter aspects of the law concerning bare or absolute trusts and bare trustees, and the distinction between such trusts and special trusts.[99]

**1-028**

### Fixed and discretionary trusts and powers

Special trusts may be subdivided into fixed[100] trusts, where the objects are identified, and discretionary trusts, where their choice is left to the trustee. A trust for A for life with remainder to his children, or to B, is a fixed trust. A trust to divide the income among such of A's children and in such shares as the trustees think fit is a discretionary trust.[101] To be distinguished is a power, where the trustees are authorised, but not directed, to distribute.[102] What at first sight appears a power may impose a duty to distribute, requiring the trustees to choose the recipients. The

**1-029**

---

[99] See § 1-036 onwards.
[100] Or "ministerial" or "instrumental".
[101] See, for instance, *Att.-Gen. v Scott* (1749) 1 Ves. Sen. 413 (trust to select preacher); *Gartside v I.R.C.* [1968] A.C. 553, HL.
[102] See *McPhail v Doulton (Baden No.1)* [1971] A.C. 424, HL. On the release of a possibility of benefiting under such a power, see *Re Gulbenkian's Settlements (No.2)* [1970] Ch. 408 and § 28-148.

Case 2:24-cv-00021-JRG   Document 54-32   Filed 07/18/24   Page 3 of 22 PageID #: 3520

on their true construction amount to declarations of trust, are express trusts, because in such cases the court finds as a matter of construction that the settlor expressed, indirectly, an intention to create a trust. Trusts arising by operation of law are trusts that are not express trusts.

**Resulting, implied and constructive trusts**

Trusts arising by operation of law comprise resulting, implied and constructive trusts. These trusts differ in many respects from express trusts and arise in widely varying sets of circumstances, which are considered elsewhere.[109]

**1-034**

**Executed and executory trusts**

This distinction refers to the method of drafting the trust instrument, which naturally affects its interpretation. An executed trust in this sense is one where the limitations of the equitable interests have been set out in complete and final form, whereas in an executory trust they are intended merely to serve as minutes or instructions for perfecting the settlement at a later date.[110]

**1-035**

### 3.   CLASSIFICATION OF EQUITABLE INTERESTS UNDER TRUSTS

**Absolute indefeasible interest in possession under a bare or simple trust**

The greatest interest that a beneficiary can have is an absolute indefeasible interest in possession under a bare or simple trust. We now turn to consider aspects of the law concerning bare or absolute trusts and bare trustees, and the distinction between an absolute indefeasible interest in possession under a bare or simple trust and interests under special trusts.

**1-036**

*Absolute beneficiary's right to direct transfer of trust property*

The trustee of a trust for a beneficiary absolutely entitled has a duty to transfer the property to or at the direction of the beneficiary,[111] assuming that the beneficiary is of full age and capacity and so able to give a valid direction and receipt, that the property is capable of transfer by the trustee in the manner directed, and that the trustee has no unsatisfied right of indemnity against the trust property. This is not a unique distinguishing feature of a bare trust, however, since the beneficiaries of a special trust, if they are all ascertained and of full age and capacity and act together, have a similar right under the rule in *Saunders v Vautier*.[112] A bare trustee has been described as a person who would, on the requisition of his beneficiaries, be compellable in equity to convey the estate to them, whether or not duties have been attached to his office, and whether or not a request for a conveyance has been made.[113] That description has been both rejected[114] and approved.[115] The descrip-

**1-037**

[109] Mainly in Chaps 8–10 (see the definitions in §§ 8-002, 8-004), 41 to 45, 50; and see §§ 3-037 onwards, §§ 4-003 to 4-011, 4-036 onwards.
[110] See § 7-002.
[111] See § 22-003.
[112] See §§ 22-014 onwards.
[113] *Christie v Ovington* (1875) 1 Ch.D. 279.
[114] *Morgan v Swansea Urban Sanitary Authority* (1878) 9 Ch.D. 582 at 584–585.

tion restates the rule in *Saunders v Vautier*, but does not, by itself, draw a distinction between a bare trust and a special trust by reference either to the nature of the beneficiary's interest or the scope of the powers and duties of a trustee for a beneficiary absolutely entitled. A trustee for a beneficiary absolutely entitled is liable to account to the trustee, and if he acts on behalf of the beneficiary in relation to the management of the trust property, he is liable to account as agent as well.[116]

*Administrative directions by absolute beneficiary pending transfer*

**1-038**   In the case of a special trust, the beneficiaries, even if they are all ascertained and of full age and capacity and act together, are not entitled to require the trustees, pending transfer of the trust property, to administer the trust in accordance with directions given by them,[117] unless the terms of the trust otherwise provide, and unless certain statutory exceptions to this rule about the appointment of new trustees apply.[118] The Court of Appeal has described a bare trustee of shares in a company as a "dummy",[119] and that imagery might suggest, perhaps, that the function of the bare trustee, pending transfer, is to do what he is told to do by the beneficiary, so that the beneficiary is entitled to give the trustee directions in relation to the administration of the trust property which are binding on the trustee, even if the terms of the trust do not so provide. If an absolute beneficiary were entitled to give such directions to the trustee, that would provide a significant distinction between a bare trust and a special trust.

**1-039**   It is, however, doubtful how far, in the absence of express provision, a trustee is bound to give effect to directions given by an absolute beneficiary, other than a direction to transfer the trust property to him or as he directs. The matter is to a very limited extent governed by statute. A trustee for a beneficiary absolutely entitled can (like a trustee of a special trust) effectively be given directions in relation to his compulsory retirement from office[120]; and (unlike a trustee of a special trust) effectively be given directions in relation to the insurance of trust property.[121] Leaving aside rights to give directions under statutory provisions, it is clear that, in the case of a trust of land, the beneficiary, though absolutely entitled, is not able to give the trustee binding administrative directions.[122] In the case of shares in a company and other assets, the position is less clear. Romer J. considered that there was no doubt that a bare trustee must vote shares at a meeting of the company in accordance with directions by the beneficial owner.[123] It has been held, however, in New Zealand that there is no such obligation.[124] It has been held also that where the

---

[115]   *Re Cunningham and Frayling* [1891] 2 Ch. 567 at 571–572.
[116]   *Cheong Soh Chin v Eng Chiet Shoong* [2015] SGHC 173 at [38].
[117]   See §§ 22-031 and 22-032.
[118]   See § 1-039, first fn in that paragraph.
[119]   *I.R.C. v Silverts Ltd* [1951] Ch. 521 at 530, CA. See too *AAZ V BBZ* [2016] EWHC 3234 (Fam); [2017] 2 F.C.R. 415 at [85]–[86].
[120]   Trusts of Land and Appointment of Trustees Act 1996, ss.19 and 20, as to which see §§ 24-034 referring to §§ 14-032 onwards (s.19) and §§ 16-028 onwards (s.20).
[121]   Trustee Act 1925, s.19(2), as substituted by Trustee Act 2000, s.34. See § 1-040 and §§ 34-070, 34-071.
[122]   *Ingram v I.R.C.* [1997] 4 All E.R. 395 at 424d, CA, *per* Millett L.J. in a dissenting judgment approved by HL [2000] 1 A.C. 293 at 305D–H, 310G.
[123]   *Kirby v Wilkins* [1929] 2 Ch. 444 at 454; and see *Re Castiglione's Will Trusts* [1958] Ch. 549 at 558.
[124]   *Re Kirkpatrick* [2005] NZHC 469; 8 I.T.E.L.R. 597. The judgment does not refer to the English cases

property consists of shares in a company subject to pre-emption provisions under the company's articles of association, the trustee is not bound to give effect to directions by the beneficiary concerning the implementation of the pre-emption procedure.[125] In Hong Kong, a trustee for a beneficiary absolutely entitled is not bound to execute a power of attorney in favour of the beneficiary even if protected by an adequate indemnity.[126] Australian authority supports the view that the only direction to which a trustee for a beneficiary absolutely entitled must give effect is a direction to transfer the trust property.[127] In a case where the only duty of the trustee is to obey the order of the court in relation to the transfer of property, the trustee is a bare trustee[128] and no question arises of any effective directions being given by the beneficiary who is absolutely entitled. Last and by no means least, the Court of Appeal has expressed the view that it is quite obvious that a trustee for a beneficiary absolutely entitled has no duty whatever to perform.[129]

*Powers of trustee for absolute beneficiary*

There are two potential explanations why a trustee holding property for a beneficiary absolutely entitled might have no duties other than a duty to transfer the property to the beneficiary or as he directs. The first explanation is that the position of such a trustee is so supine, being a mere repository, that he need do nothing whatever, save to effect the transfer. The other is that, pending transfer, he has powers, and hence with it, responsibility, of his own, and the exercise of the powers is up to him, not the beneficiary. The second explanation, to the extent that it is correct, militates against the view that a trustee for a beneficiary absolutely entitled has a passive role. Such a trustee has some powers, even in a case where the beneficiary is of full age and capacity,[130] and the trustee has no unsatisfied rights of indemnity:[131]

**1-040**

(1) A trustee holding on trust for an absolute beneficiary is not a mere cypher[132] and has the powers of a beneficial owner in relation to the land.[133] His role is therefore an active one.

(2) A trustee holding property other than land appears to have powers under the Trustee Act 2000. This is clearest in the case of insurance. The statutory power of insurance under section 19(1) of the Trustee Act 1925,[134] as substituted by the 2000 Act,[135] is exercisable by a trustee for an absolute beneficiary or beneficiaries of full age and capacity, unless the beneficiary

---

cited in the previous footnote, but rather focuses on *Butt v Kelson* [1952] Ch. 197, CA, a case about special trusts considered in this context in § 22-032.

[125] *Re Kirkpatrick*, above.

[126] *Hotung v Ho Yuen Ki* (2002) 5 I.T.E.L.R. 556, HK CA.

[127] *Herdegen v Federal Commissioner of Taxation* (1988) 84 A.L.R.271 at 281, Aus FC.

[128] *Re Docwra* (1885) 29 Ch.D. 693.

[129] *Re Lashmar* [1891] 1 Ch. 258 at 267, CA.

[130] As to the powers of a trustee of an absolute trustee for a minor, see § 1-042.

[131] As to the powers of a trustee with an unsatisfied right of indemnity, see § 1-043.

[132] *Ingram v I.R.C.* [1997] 4 All E.R. 395 at 424d, CA, *per* Millett L.J. in a dissenting judgment approved by HL [2000] 1 A.C. 293 at 305D–H, 310G. See too *Byrnes v Kendle* [2011] HCA 26; 14 I.T.E.L.R. 299 at [21].

[133] Trusts of Land and Appointment of Trustees Act 1996, s.6 which applies to bare trustees, see § 37-005. At common law a trustee of land for beneficiaries absolutely entitled did not have power to sell the land without their consent: *Lee v Somes* (1886) 36 W.R. 884.

[134] Printed in § 34-070.

[135] Trustee Act 2000, s.34.

DEFINITION AND CLASSIFICATION

or beneficiaries otherwise direct.[136] It is equally clear that the trustee is under the statutory duty of care in section 1 of the 2000 Act[137] when exercising the statutory power of insurance.[138] The fact that bare trustees are intended to have the revised statutory power to insure conferred by the 2000 Act tends to indicate that they are also intended to have the general power of investment under section 3 of that Act.[139] The question then arises whether a bank's or stockbroker's trustee company, for instance, holding shares as nominee for a customer, has power to change the investments, and even a duty to do so when a banker or stockbroker would conclude that it was unwise to continue to hold them. It is hard to escape the conclusion that it does on the wording of the 2000 Act. Although the provision that trustees are under the statutory duty "when exercising" the general power appears to exclude the time when they are considering whether, or when, to exercise it[140] that does not help. The reason is that it leaves them under the statutory duty carefully to review their investments from time to time.[141] Conceivably such a nominee is to be considered something different from a trustee, considering the use of different words in section 16 of the 2000 Act,[142] but that would be a difficult interpretation. All that can be said until judicial light is thrown on the puzzles thrown up by the failure to define "trustee" in the 2000 Act is that, whenever the Act confers on bare trustees a power to which the statutory duty is applied, the bare trustees are bound to come up to the statutory standard of care when exercising the power. The reasoning which indicates that the statutory power of investment applies to bare trustees suggests that other powers in the 2000 Act do so as well, with a statutory duty of care under the 2000 Act when applicable,[143] namely the power to acquire land under section 8 of the 2000 Act,[144] the power to delegate to agents under section 11 of the 2000 Act,[145] and powers concerning remuneration under sections 28 and 29 of the 2000 Act.[146]

(3)   The position as to administrative powers under the Trustee Act 1925 (other than section 19 as substituted by the 2000 Act,[147] concerning insurance) is unclear.[148] The statutory powers of maintenance and advancement in sections 31[149] and 32[150] of the Trustee Act 1925 are not mere administrative powers. The former cannot, in view of its terms, have any application in relation to an adult beneficiary with an absolute interest. The latter is expressed to apply to a beneficiary who is absolutely entitled, but it has

---

[136]  Trustee Act 1925, s.19(2) and (3), as substituted by Trustee Act 2000, s.34.
[137]  Printed in § 34-007.
[138]  Trustee Act 2000, s.2 and Sch.1, para.5. See § 34-008.
[139]  Printed in § 35-002.
[140]  See § 34-008.
[141]  See §§ 34-008(1) and 35-076.
[142]  See § 34-085.
[143]  See generally § 34-008.
[144]  Printed in § 35-123.
[145]  Printed in § 36-013.
[146]  See §§ 20-020 onwards.
[147]  Trustee Act 2000, s.34.
[148]  Matthews [2005] P.C.B. 336 at 343 suggests that the power under Trustee Act 1925, s.22(4) to have accounts audited applies to a bare trustee.
[149]  Printed in §§ 31-011 and 31-017.
[150]  Printed in § 32-011.

[22]

CLASSIFICATION OF EQUITABLE INTERESTS UNDER TRUSTS

nonetheless been said that the power is destroyed when property vests absolutely in a beneficiary on attaining full age.[151]

(4) It is also unclear what, if any, powers a trustee for a beneficiary absolutely entitled has under the general law. There are authorities which suggest that a bare trustee has power to exercise his legal rights as owner of shares in a company in the interests of the beneficiary,[152] in default of directions by the beneficiary (to the extent that the beneficiary is entitled[153] to give effective directions).[154]

*Express powers conferred on trustee for absolute beneficiary*

A trustee for a beneficiary absolutely entitled may have express powers and duties conferred or imposed upon him by the trust instrument or otherwise by agreement between him and the beneficiary, so that the relationship is, on any view, of an active nature. It may be argued that, in such a case, the express powers and duties necessarily derive from the law of contract, constituting an agency between the bare trustee and the beneficiary, so that the bare trustee remains a mere repository so far as the law of trusts is concerned.[155] Clearly an agency arrangement under the law of contract can be created, but we do not think that it should necessarily be assumed that this is the only way of conferring, at least, express administrative powers on a trustee for an absolute beneficiary. If the general law itself confers powers, to some extent, on such a trustee,[156] it is not obvious why it should not be possible to confer express powers under trust law to supplement or replace powers under the general law, or statutory powers. The point is not merely academic. If express powers (or duties) for a bare trustee necessarily derive from an agency, they would, for instance, fail on the incapacity of the beneficiary, unless created under an enduring[157] or lasting[158] power of attorney.

1-041

*Absolute trust for minor*

Whatever is the position in relation to a bare trust created by a person of full age and capacity as a sole absolute beneficiary, it is clear, in our view, that an absolute trust can be created by a settlor for a minor beneficiary[159] with extensive administrative powers available during minority consistent with the beneficial interest, and with the statutory powers of maintenance and advancement conferred by sections 31[160] and 32[161] of the Trustee Act 1925 with modifications to those powers not altering their substantive character, whether by way of declaration of trust by the settlor,

1-042

---

[151] *Pilkington v I.R.C.* [1964] A.C. 612 at 641, HL, referring to the destruction of the power on absolute vesting in an adult.
[152] *Re Kirkpatrick*, above.
[153] As to whether an absolute beneficiary can give binding directions to the trustee pending transfer, see §§ 1-038 and 1-039.
[154] *Kirby v Wilkins* [1929] 2 Ch. 444 at 454. But see *Re Lashmar* [1891] 1 Ch. 258 at 267, CA; *I.R.C. v Silverts Ltd* [1951] Ch. 521 at 530, CA.
[155] See Matthews [2005] P.C.B. 266 at 267–268.
[156] See § 1-040.
[157] Under Mental Capacity Act 2005, s.66(3) and Sch.4 (which replaced Enduring Powers of Attorney Act 1985).
[158] Under Mental Capacity Act 2005, s.9 and Sch.1.
[159] *Note Herdegen v Federal Commissioner of Taxation* (1988) 84 A.L.R.271 at 282, Aus. FC.
[160] *Re Kehr* [1952] Ch. 26. If the minor dies during minority, accumulations will form part of his estate since they will follow the destination of the capital, see § 31-018. As to a revocable appointment of

or by transfer to trustees to hold on trust for the beneficiary. Plainly, the law of contract and agency has no role to play in bare trusts of this nature. And the description of the trustee of such a trust as a mere repository is inept. An absolute trust for a minor may be varied under the Variation of Trusts Act 1958.[162]

*Trustee's own interest—unsatisfied rights of indemnity*

**1-043**    A trustee who holds property for a beneficiary absolutely entitled is not, for some legal purposes, a "bare trustee" if the beneficiary's interest takes effect subject to any equitable interest or lien in the trust property to which the trustee is entitled (or any other beneficial interest of the trustee).[163] In our view, there is an important distinction between a trustee who holds the trust property for a beneficiary absolutely entitled, and free from any unsatisfied rights of indemnity of the trustee, and a trustee who holds property for such a beneficiary subject to unsatisfied rights of indemnity (which confer an equitable interest or lien on the trustee[164]). Though there are doubts about the extent of the trustee's powers and duties in the former case, there are none in the latter case. The express powers conferred on the trustee before the beneficiary became absolutely entitled survive pending satisfaction of the trustee's right of indemnity,[165] and the trustee has a right of retention and so is not bound to give effect to any direction by the beneficiary as to the transfer of the trust property, so far as the retention is proper to satisfy the rights of indemnity.[166] The trustee, in this latter case, is in no sense a mere repository and is in a similar (but not identical[167]) position to a trustee of a special trust, save that he has personal rights of indemnity against the beneficiary as well as a proprietary indemnity.[168]

*Custodian trustee*

**1-044**    A custodian trustee under the Public Trustee Act 1906 is not a bare trustee.[169]

---

an absolute interest to a minor, see *Re Delamere's Settlement Trusts* [1984] 1 W.L.R. 813, CA.

[161] *Re Kehr*, above; *D (a child) v O* [2004] EWHC 1036 (Ch); [2004] 3 All E.R. 780 at [8]–[9]. See § 32-026.

[162] *D (a child) v O*, above. See § 53-012.

[163] *Morgan v Swansea Urban Sanitary Authority* (1878) 9 Ch.D. 582; *Re Blandy Jenkins' Estate* [1917] 1 Ch. 46. See too *Lysaght v Edwards* (1876) 2 Ch.D. 499 at 506; *Schalit v Joseph Nadler Ltd* [1933] 2 K.B. 79 at 81–82.

[164] See § 19-044. The rights of a bare trustee to indemnity were considered in *Scoretz v Kensam Enterprises Inc.* [2017] BCSC 1356; 20 I.T.E.L.R. 511 at [51]–[60]; [2018] BCCA 66 at [38]–[40], where it was held at first instance that a bare trustee had a personal but no proprietary right of indemnity, and the appellate court was not persuaded that there was a right to security for indemnity, though thought that a bare trustee had a right of reimbursement. It is clear, however, from *Hardoon v Belilios* [1901] A.C. 118 at 124, PC, that the personal right of indemnity (see §§ 19-057 to 19-060) is in addition to not in place of the proprietary right of indemnity. *Scoretz* can be explained as a case where the trustee wrongly sought indemnification before transferring the trust assets to the beneficial owner when there was no unsatisfied right of indemnity.

[165] *X v A* [2000] 1 All E.R. 490.

[166] See § 24-038.

[167] He has a duty to notify the beneficiary of an intention to exercise his powers, see *X v A* above.

[168] See §§ 19-057 onwards.

[169] *I.R.C. v Silverts Ltd* [1951] Ch. 521, CA. *Re Brooke Bond & Co. Ltd's Trust Deed* [1963] Ch. 357. As to custodian trustees, see §§ 18-059 onwards.

CLASSIFICATION OF EQUITABLE INTERESTS UNDER TRUSTS

*Two or more persons absolutely entitled*

A trustee who holds property in trust for two or more persons absolutely is not in all respects in the same position as a trustee who holds property in trust for a single beneficiary absolutely.[170]

**1-045**

*Sub-trusts of absolute trusts*

If A holds property in trust for B absolutely and B declares that he holds his equitable interest in the property in trust for C absolutely, the declaration of trust is not tantamount in law to an assignment by B to C so that B drops out of the relationship. Rather A continues as a trustee for B who holds as sub-trustee for C.[171] Since B is a mere bare trustee for C, A may account directly to C, but is not bound to do so, and C cannot complain if A continues to pay the income of the property to B who in turn is liable under the sub-trust to pay C.[172] If C wishes to assert a direct equitable right against A, then he may terminate the sub-trust under the rule in *Saunders v Vautier*[173] by requiring an assignment from B, and if C wishes to obtain a transfer of the property itself, he may obtain an order for a transfer in proceedings against A to which B is party, and the court may not, since B is before the court and bound by the order made, require B to be a party to the transfer.[174]

**1-046**

*Liability for knowing receipt*

Distinctions may be drawn between the liability of beneficiaries for knowing receipt by their trustees, according to whether the trust is a nominee arrangement or a special trust.[175]

**1-047**

**Vested interests**

A vested interest[176] is an interest which is not subject to any condition precedent.[177] Thus a beneficiary may have a vested interest in trust assets even though he is not entitled to immediate enjoyment of those assets under the terms of the trust. An interest may be vested in interest or vested in possession. An interest vested in possession confers an immediate right to present enjoyment of the property while an

**1-048**

---

[170] See generally §§ 22-006 to 22-012.
[171] *Nelson v Greening & Sykes (Builders) Ltd* [2007] EWCA Civ 1358; 10 I.T.E.L.R. 689 at [56]–[57]; *Sheffield v Sheffield* [2013] EWHC 3927 (Ch); [2014] W.T.L.R. 1039 at [78] onwards; these cases considering and explaining earlier authorities which at first sight appear to be a contrary effect, namely *Burgess v Wheate* (1759) 1 Eden 177; *Head v Lord Teynham* (1783) 1 Cox Eq. 57; *Grainge v Wilberforce* (1889) 5 T.L.R, 436 at 437; *Re Lashmar* [1891] 1 Ch. 258 at 267, CA; *Grey v. I.R.C.* [1958] Ch. 690 at 715, CA. In *Re Charlotte Street Properties Ltd* [2019] EWHC 1722 (Ch) at [59], *Re Lashmar* was cited as authority for the proposition that, where the sub-trustee has no active duties to perform the legal owner as head-trustee could act on the directions of the beneficiaries under the sub-trust. The more recent authorities were not referred to. On the nature of the proprietary interest under a sub-trust see too *Re Lehman Brothers International (Europe) (in admin.)* [2010] EWHC 2914 (Ch) at [226] (on appeal [2011] EWCA Civ 1514; [2012] 2 B.C.L.C 151); *SL Claimants v Tesco Plc* [2019] EWHC 2858 (Ch) at [45]–[93].
[172] *Sheffield v Sheffield*, above.
[173] (1841) Cr. & Ph. 240. See §§ 22-014 onwards.
[174] *Head v Lord Teynham*, above; *Grainge v Wilberforce*, above.
[175] See §§ 42-053 and 42-061.
[176] For a history of vested interests see Hawkins, *Construction of Wills* (5th edn), §§ 45-001 onwards.
[177] *Skelton v Younghouse* [1942] A.C. 571 at 575, HL.

interest that is merely vested in interest confers a present right to future enjoyment. Both are distinct from a contingent interest which will not vest unless and until some requirement (other than merely the determination of a prior interest) is satisfied, for instance attainment of some specified age, or survival to a particular time, or the occurrence of some external event. Where property is held on trust for "A for life, then to B absolutely" both A and B have a vested interest in the property albeit A has the immediate right to enjoy the property. A's interest is vested in possession and B's interest is vested in interest. By contrast, a beneficiary with a contingent interest has no vested right until the contingency occurs.[178] A vested interest is transmissible and may be assigned by the beneficiary, and will form part of the beneficiary's estate upon his death.[179]

*Indefeasible and defeasible vested interests*

**1-049**   A vested interest, whether vested in possession or vested in interest, may be either indefeasible or defeasible. An interest is indefeasible if there is no prior or concurrent interest or power which is capable of defeating it in whole or in part. To take the simple case of a trust for A for life and then to B absolutely, the existence of A's life interest operates to postpone the vesting in possession of B's interest, but it cannot defeat it, and so B has an indefeasible interest.

*Vested interest defeasible by prior or concurrent interest*

**1-050**   A vested interest may be wholly or partially defeasible by a prior interest or partially defeasible by a concurrent interest. For example, if there is a trust for A for life, then for such of A's children as attain the age of 18 years, and then for B absolutely, B's interest is defeasible since it will be destroyed if A has children who attain that age and who have a interest which takes priority over B's interest. If a fund is held in trust for such of A's children whenever born who attain the age of 18 years, and it is clear from the wording used that the class of beneficiaries does not close when the eldest child reaches the age of 18 years,[180] then during A's lifetime any child of A who is over the age of 18 years has an interest which is vested but liable to be partially divested by the birth of another child to A.

*Vested interest defeasible by exercise of overriding power of appointment*

**1-051**   Where a power of appointment over capital and income of trust property is exercisable in favour of a class of beneficiaries, and subject to and until in default of appointment, the property is held on trust for A for life and then to B absolutely, both A and B have defeasible vested interests since their interests are capable of being brought to an end in whole or in part by an exercise of the power of appointment. "The effect of such an exercise of the power is to defeat wholly or *pro tanto* the interests which up to then were vested in the persons entitled in default of appointment and to create new estates in those persons in whose favour the ap-

---

[178] See § 1-055.
[179] This paragraph was cited with approval in *Twin Benefits Ltd v Barker* [2017] EWHC 1412 (Ch) at [77].
[180] See §§ 6-088 onwards on closing of a class of beneficiaries.

pointment had been made."[181] And so a beneficiary with a vested interest may lose some or all of that interest if the trustees choose to exercise a power of appointment in favour of a different beneficiary.[182] Alternatively, a trust may provide for a beneficiary to take in default of the trustees exercising a power of appointment, in which case the default beneficiary will take a vested but defeasible interest.[183] A vested interest in remainder which is liable to be divested by the exercise of a power to appointment the capital of the trust in favour of the life tenant may be treated as a financial resource of the remainderman under section 25(2)(a) of the Matrimonial Causes Act 1973, and thereby brought into ancillary relief proceedings.[184]

*Terminable vested interests*

Closely similar to a defeasible vested interest is a terminable vested interest. A terminable vested interest is one that is subject to a condition subsequent (rather than precedent) which, if it occurs, has the effect of bringing the interest to an end before the time of its natural termination, as for example where a testator leaves his estate upon trust for his widow for life or until her remarriage. A feature of a terminable interest is that it may sometimes be created so as to achieve some objective which is not permitted by law if sought to be achieved by direct prohibition. For instance, it is not permissible in English law to prohibit the assignment of interests under trusts, but it is permissible to create an interest which is for life or until an earlier assignment or attempted assignment of the interest by the holder of the interest.[185]

**1-052**

*Fine distinctions between contingent and vested defensible interests*

The distinction between a vested defeasible and contingent interest can often seem to be both narrow and technical. If property is given to A if he reaches a certain age, with a subsequent gift over to B if A fails to reach that age, then A's interest in the property is a vested interest subject to divestment, rather than a contingent interest.[186] That particular rule is founded on the principle that the condition subsequent of the prior gift to A and the condition precedent of the later gift to B are counterparts to one another and the court, when faced with the two gifts, reads them together to indicate that A's interest should vest subject to the subsequent contingency of the gift over being satisfied.[187] Similarly, if property is devised to A for life and then to B and C in equal shares, with a gift over in the event of either B or C dying without issue, then B and C will take vested interests in remainder subject to being divested if they die before A leaving any issue, but which will become absolute interests if they predecease A but do not leave any issue.[188]

**1-053**

[181] *Re Brook's Settlement Trusts* [1939] Ch. 993 at 997D–E.
[182] *Howell v Lees-Millias* [2009] EWHC 1754 (Ch); [2009] W.L.T.R. 1163.
[183] *Re Ware* (1890) 45 Ch. D. 269 at 279; *Re Peel* [1964] 1 W.L.R. 1232.
[184] *C v C (Ancillary Relief: Trust Fund)* [2009] EWHC 1491 (Fam); [2010] W.T.L.R. 1419 at [64]. See §§ 51-011 and 5-046 onwards.
[185] See §§ 6-179.
[186] The rule in *Phipps v Ackers* (1842) 9 Cl. & Fin. 583. See further *Brotherton v I.R.C.* [1978] 1 W.L.R. 610, CA. See § 9-035 and § 33-013.
[187] *In re Penton's Settlements* [1968] 1 W.L.R. 248 at 256 *per* Ungoed-Thomas J; *Re Mallinson's Consolidated Trusts* [1974] 1 W.L.R. 1120; see §§ 9-035 onwards.
[188] *Browne v Moody* [1936] A.C. 635 at 649B–C, PC; *Re Brooke* [1953] 1 W.L.R. 439.

*Practical significance of the distinction between contingent and vested defeasible interests*

**1-054**   The main reasons why the distinction between a contingent and vested defeasible interest is significant are as follows:

(1)   Vesting is at the heart of the application of the rule against perpetuities, and the rule against perpetuities applies in a quite different way to contingent interests on the one hand and defeasible or terminable vested interests on the other hand. If an interest is contingent upon occurrence of an event which is too remote then the interest fails. If an interest is vested but defeasible by the occurrence of an event which is too remote then the condition subsequent fails and the interest is indefeasible.[189]

(2)   Similarly, the distinction between a contingent interest and defeasible interest is significant in determining whether the unlawful character of an event upon which an interest is dependent causes the interest to fail or causes the condition to fail.[190]

(3)   The distinction is important to the operation of[191] the doctrine of acceleration.[192]

(4)   Though statute[193] has to a large extent assimilated the treatment of income arising in respect of contingent and vested defeasible interests, the distinction between the two kinds of interest remains important in that the starting point to any consideration of interests in income is that a vested interest, subject to any prior vested interest, carries the right to income unless and until the interest determines, while a contingent interest does not carry that right until the contingency occurs.

**Contingent interests**

**1-055**   A contingent interest is an interest which may become a vested interest but is dependent for that transformation upon a future event or occurrence. The difference between an estate vested in interest and a contingent interest is the difference between a "present right of future enjoyment" and "a right of enjoyment which is to accrue, on an event which is dubious or uncertain."[194] As we have seen, in the case of a trust for A for life, then to B absolutely, both A and B have vested interests, and even if B predeceases A, then B's vested interest will pass to his estate.[195] In contrast, a trust for A for life, then to B provided that B shall outlive A creates a contingent interest in favour of B because B will obtain a vested interest only if he is still alive when A dies.[196]

---

[189]   See §§ 6-037 onwards and § 6-109.
[190]   See §§ 6-025, 6-026.
[191]   See § 9-035.
[192]   See §§ 9-031 onwards.
[193]   Trustee Act 1925, s.31 on which see Chap.31.
[194]   Fearne, *Contingent Remainders and Executory Devises* (10th edn, 1844), p.2.
[195]   *Browne v Moody* [1936] A.C. 65 at 644H–647B, PC.
[196]   This paragraph was cited with approval in *Twin Benefits Ltd v Barker* [2017] EWHC 1412 (Ch) at [77].

CLASSIFICATION OF EQUITABLE INTERESTS UNDER TRUSTS

*Trusts for children*

A trust for such children of the settlor as attain the age of 18 years does not confer   **1-056**
a vested interest on any child until he reaches 18. The interest remains contingent,[197]
even if the trustees have the power to apply the income for the benefit of the
beneficiaries before they reach 18.[198] If, however, the trust provides for the minor
beneficiaries to receive the income of the trust before reaching 18 then that is likely
to create a vested interest liable to be divested if they fail to live to the requisite
age.[199] A trust in favour of children who attain 18 and, if there is only one child, in
trust for that child, does not require the only child to reach 18 for the gift to vest:
the contingency is applicable only if there is more than one child.[200]

*Gift to a class upon a contingency and a gift to a contingent class*

There is a distinction between a gift to a class upon a contingency, and a gift to a   **1-057**
contingent class.[201] In the former case the rule is that the contingency is not imported
by implication into the description of the class so as to confine the gift to those
members of the class who survive the contingency. Where a testator created five life
interests for his five children and after the death of the last survivor his trustees held
the fund on trust for the issue of his children, the fact that some of the testator's
grandchildren had predeceased him did not preclude their executors from claim-
ing their share. The grandchildren as a class obtained a vested interest in the fund
which was not dependent on surviving the last remaining child of the testator, and
was not liable to divestment, *i.e.* an absolute vested interest.[202]

**Unascertained interests**

There is a distinction between a contingent interest and an unascertained interest.   **1-058**
If property is held on trust for A for life, subject thereto for B (who is A's eldest son)
if he survives A, subject thereto for C (who is A's second son) if he survives B, both
B and C have future contingent interests. But suppose that instead property is set-
tled on trust for A for life and subject thereto for the person who on A's death is A's
eldest surviving son, or, which is the same thing, the son of A who would be his
heir under the law in force concerning succession to freehold land before 1926. In
such a case, on the authorities, neither B nor C has a contingent interest; each has
a mere *spes*. The point has arisen in relation to trusts in favour of the person who
will at a future date succeed to a title. It has been held that the presumptive heir does
not have a contingent interest, but rather a mere expectancy. As was said by Stamp
J. in *Re Midleton's Will Trusts*:[203]

---

[197] *Leake v Robinson* (1817) 2 Mer. 383; *Bull v Pritchard* (1847) 1 Russ. 213; *Dewar v Brooke* (1880)
14 Ch. D. 529; *Thomas v Wilberforce* (1862) 31 Beav. 299; compare *Bree v Perfect* (1844) 1 Coll.
128; *Re Bevan's Trusts* (1887) 34 Ch. D. 716.
[198] *Re Hume* [1912] 1 Ch. 693 at 699; *Haworth v I.R.C.* [1974] S.T.C. 378.
[199] *Re Hume*, above, at 698. See § 1-049.
[200] *Johnson v Foulds* (1867) L.R. 5 Eq. 268 at 276. Compare *Judd v Judd* (1830) 3 Sim. 525; *Merry v
Hill* (1869) L.R. 8 Eq. 619 where the condition applied to the only surviving child as well.
[201] *Boulton v Beard* (1853) De G.M.&G. 608; *Orlebar's Settlement Trusts* (1875) L.R. 20 Eq. 711;
*Hickling v Fair* [1899] A.C. 15, HL Sc; *Re Walker* [1917] 1 Ch. 38; *Re Sutcliffe* [1934] Ch. 219.
[202] *Re Sutcliffe* [1934] Ch. 219.
[203] [1969] 1 Ch. 600 at 607–608.

"A gift to A, if on the death of B he shall be the heir of B or one of the next-of-kin of B or shall then have some other specified characteristic, confers on A a present interest called contingent and which becomes vested if, on the death of B, A has the required characteristic. On the other hand, a gift to whomsoever shall at the death of B, a living person, be the heir of B or one of the next-of-kin of B, or shall then have some other characteristic, in my judgment confers no interest upon anyone until the death of B, when you enquire who has the required characteristic. A gift in equal shares to the persons who at the death of B shall be members of the Athenaeum club no more confers an interest, contingent or otherwise, on the present members of the club who may hope to remain members until the death of B. Neither class has during the life of B, even if B be in articulo mortis, more than a hope of being or becoming one of the designated class, *spes successionis*."

And so in that case a trust in favour of the person who should on the death of the present holder of a peerage become the holder of the peerage created no interest in favour of the presumptive heir.[204] Thus, there is a great deal of difference between the treatment of a trust for A, who is the eldest son of Lord X, contingently upon his surviving Lord X, and a trust for the person who becomes Lord X upon the death of the present holder of that peerage. In the first case A has all the protection conferred by trust law on future contingent interests while in the second case, A has nothing but a *spes successionis* while Lord X is alive, even though it is certain that A will take under the trust on his father's death if he survives his father.

*Practical importance of the distinction between contingent and unascertained interests*

1-059   The distinction between a contingent interest and an unascertained interest has practical importance as follows:

(1) *Assignment.* A future vested or contingent interest under a trust is capable of being settled without consideration since it is a present right or existing contingent right[205] to future enjoyment.[206] In contrast, an unascertained interest cannot be assigned except for value.[207] Thus a line of cases[208] decides that a presumptive taker under a gift to the next of kin of a living person as such has no contingent interest, but a mere expectancy that cannot be assigned except for value.[209]

(2) *Information.* A person with an unascertained interest is not, as the authorities stand, entitled to information or accounts from the trustees.[210]

(3) *Breach of trust.* A person with an unascertained interest does not, as the authorities stand, have *locus standi* to bring a claim for breach of trust.[211]

---

[204] *cf. Re St Albans Will Trusts* [1963] Ch. 365.

[205] See § 2-037.

[206] Lord *Dursley v Fitzhardinge* (1801) 6 Ves. Jr. 251 at 260, *per* Lord Eldon L.C.

[207] See §§ 2-036, 2-037.

[208] *Meek v Kettlewell* (1842) 1 Hare 464 at 475–476 (affd (1843) 1 Ph. 342); *Clowes v Hilliard* (1876) 4 Ch.D. 413; *Re Parsons* (1890) 45 Ch.D. 51; *Molyneux v Fletcher* [1898] 1 Q.B. 648 at 655–656; *Re Mudge* [1914] 1 Ch. 115, CA.

[209] See §§ 2-039 onwards.

[210] See §§ 21-009, 21-091.

[211] See § 41-075.

CLASSIFICATION OF EQUITABLE INTERESTS UNDER TRUSTS

(4) *Variation of Trusts Act 1958.* The court may approve a variation of trust on behalf of persons with unascertained interests, if satisfied that the variation is beneficial to them, other than any person whose interest would have been ascertained had the date or event upon which the ascertainment of his interest depended occurred at the time of the application to the court.[212] By contrast the court has no jurisdiction to approve a variation of trust on behalf of a person with a future contingent interest unless he lacks capacity.[213]

*Endurance of the distinction between contingent and unascertained interests*

The difference between the treatment of persons who have a future contingent interest and an unascertained interest to a large extent turns on the language used to describe the gift, rather than a difference of substance between the future contingent interest and the unascertained interest. We consider that the stark distinction between the treatment under the authorities as they now stand of a future contingent interest and an ascertained interest is open to reconsideration and perhaps restatement by the Supreme Court (though not any lower English court) or the Privy Council; and that the approach adopted by the Privy Council in *Schmidt v Rosewood Trust Ltd* to the question whether the distinction between a discretionary trust and a mere fiduciary power justified a totally different treatment of the rights of objects of them, might be influential to a re-consideration of the question whether the distinction between a future contingent interest and an unascertained interest justifies the totally different treatment in trust law of the persons who stand to take under them. **1-060**

**Discretionary interests**[214]

The term 'discretionary interest' is convenient to describe the interests of the object of a discretionary trust. An object of a discretionary trust has no proprietary interest in the trust assets or capital[215] and no right to a definable part of the trust income.[216] In general, a discretionary trust has no one in whom the beneficial interest in the trust property can be said to be vested because vesting is contingent upon the selection of an object from a nominated class.[217] However, an object of a discretionary trust: **1-061**

"… has a right to be considered as a potential recipient of benefit by the trustees and a right to have his interest protected by a court of equity. Certainly that is so, and when it is said that he has a right to have the trustees exercise their discretion "fairly" or "reasonably" or "properly" that indicates clearly enough that some objective consideration (not stated explicitly in declaring the discretionary trust, but latent in it) must be applied by the trustees and that the right is more than a mere spes."[218]

---

[212] See §§ 43-051 and 43-052.
[213] *Knocker v Youle* [1986] 1 W.L.R. 934.
[214] For further discussion of discretionary trusts, see §§ 28-024 onwards.
[215] *Gartside v I.R.C.* [1968] A.C. 553, HL at 617; *Re Tantular* [2014] JRC 128; 2014 (2) JLR 25 at [30]; *Granada Group Ltd v The Law Debenture Trust Corp. Plc* [2016] EWCA Civ 1289; [2017] Bus. L.R. 870 at [30]; *Biema Holdings Ltd v SG Hambros Bank (Channel Islands) Ltd* [2017] JRC 122 at [61].
[216] *Sainsbury v I.R.C.* [1970] Ch. 712 at 723H.
[217] *Murphy v Murphy* [1999] 1 W.L.R. 282, 290.
[218] *Gartside v I.R.C.* [1968] A.C. 553 at 605–606, HL *per* Lord Reid, at 617H–618B, *per* Lord

A discretionary interest includes a right to be considered for the exercise of the trustees' discretion;[219] a right to compel the due administration of the trust;[220] a *prima facie* right to obtain information and accounts from the trustees;[221] and a right to bring a claim for breach of trust, including a right to compel a third-party recipient of trust assets to restore them to the trustees.[222] It has been suggested that an object of a discretionary trust may have a legitimate expectation of being consulted before a regular payment is stopped, or at least given the opportunity to persuade the trustees to continue the payments.[223] The question whether a discretionary interest counts as an interest under a trust for the purposes of a freezing injunction is considered elsewhere.[224]

**1-062**  A discretionary interest can be surrendered[225] or assigned for value.[226] In certain circumstances all the objects of a closed class of discretionary beneficiaries may act together to bring the trust to an end.[227] However, the objects of a discretionary trust have no interest in possession in the trust fund, and that is the case whether the trust is exhaustive[228] or non-exhaustive.[229]

*Employee benefit trusts*

**1-063**  An employee benefit trust (EBT) is a species of discretionary trust established for the benefit of a company's employees, and will often include as objects the relatives and dependants of the employees. EBTs are often established to save tax by taking advantage of section 86 of the Inheritance Tax Act 1984 (trusts for the benefit of employees) or section 1166 of the Companies Act 2006 (employee share schemes). It should be noted that an attempt to use EBTs to avoid national insurance contributions or income tax is likely to be caught by the disguised remuneration provisions of Part 7A of the Income Tax (Earnings and Pensions) Act 2003. Generally, the trustee of the EBT is entirely separate from the company, which usually acts as the settlor, and from the senior management. It was a breach of trust for the trustees of an EBT established for the benefit of employees to transfer shares in the company to a second EBT established for the benefit of the company's senior management, and the director who instigated the transfer was liable for assisting in the breach of trust.[230] The trustees owe fiduciary duties in the same way as other

---

Wilberforce; *Re Munro's Settlement Trusts* [1963] 1 W.L.R. 145 at 149A; *I.R.C. v Eversden* [2002] EWHC 1360 (Ch); [2002] W.T.L.R. 1013 at [13]–[14] (affd [2003] EWCA Civ 668; [2003] W.T.L.R. 893); *JSC Mezhdunarodniy Promyshlenniy Bank v Pugachev* [2015] EWCA Civ 139; [2016] 1 W.L.R. 160 at [13].

[219]  *Re Hay's Settlement Trusts* [1982] 1 W.L.R. 202 at 209A–C. See § 29-007.
[220]  *Whaley v Whaley* [2011] EWCA Civ 617; [2012] 1 F.L.R. 735 at [112].
[221]  *Schmidt v Rosewood Trust Ltd* [2003] 2 A.C. 709 at [51], [66]–[67], PC. See §§ 21-020, 21-078 onwards.
[222]  See § 41-073.
[223]  *Scott v National Trust for Places of Historic Interest or Natural Beauty* [1998] 2 All E.R. 705 at 718C–H *per* Robert Walker J.; cited with approval in *Maciejewski v Telstra Super Pty Ltd* (1998) 44 NSWLR 601 at 605; doubted in *Re Y Trust* [2011] JRC 135; 14 I.T.E.L.R. 687.
[224]  See § 21-118.
[225]  *Re Gulbenkian's Settlement Trusts (No.2)* [1970] Ch. 408.
[226]  See §§ 26-010 and 26-011.
[227]  See §§ 22-022.
[228]  *Sainsbury v I.R.C.* [1970] Ch. 712; *Re Weir's Settlement Trusts* [1971] Ch. 145.
[229]  *Gartside v I.R.C.* [1968] A.C. 553, HL.
[230]  *Roadchef (Employee Benefit Trustees) Ltd v Hill* [2014] EWHC 109 (Ch).

trustees of discretionary trusts,[231] and the beneficiaries have the same rights, including the right to compel the due administration of the trust; to be considered by the trustees; and if necessary to bring an action for breach of trust.

An EBT, as a discretionary trust, must comply with the rule against perpetuities. In certain circumstances an EBT may be drafted sufficiently widely to qualify as a charitable trust, for example for the relief of poverty among members of a class of beneficiaries, and capable of validation under the Charitable Trusts (Validation) Act 1954.[232]

**1-064**

### Interests in possession

An interest in possession is a present right to present enjoyment, a vested and indefeasible interest in the net trust income. In *Pearson v I.R.C.*[233] the House of Lords held that no interest in possession arises if the beneficiary's interest is subject to the trustees' power to accumulate the income thus depriving the beneficiary of access to any of the income from the trust assets, and that this is the case whether or not the trustees have in fact exercised the power to accumulate.[234] The principle applies whether there is a power to accumulate or a trust to accumulate.[235] The question is whether the beneficiary is entitled to call for the net income as soon as it arises. If the answer to that question depends on whether the trustees choose to exercise a power to accumulate the income, then the beneficiary has no interest in possession. The trustees' power must be a dispositive power—a power to dispose of the net income—rather than an administrative power exercisable, for example, to maintain the trust property.[236] An administrative power to apply the trust income would not deprive the beneficiary of an interest in possession because the present right to present enjoyment subsists, albeit that the entire income may be consumed by the trustees' application of the income in the preservation of the trust estate.[237] For the same reasons, a beneficiary will have an interest in possession even if the trust assets do not produce any income. The interest in possession is not created and extinguished according to whether or not there is any income; the beneficiary has an interest in possession if, in accordance with the terms of the trust, he is able to call for the income *if there is any*. For example, if the trustees have the power to make an interest free loan to the beneficiaries, and they exercise that power in such a way that the trust no longer has any income, the beneficiaries may still have an interest in possession provided they would be entitled to any (hypothetical) income the trust assets might generate.

**1-065**

A power of investment that expressly authorises investment in non-income producing assets does not preclude an interest in possession.[238] A trust which confers a right to occupy property, even if the right is not exercised, creates an interest in possession in the beneficiary of that right. Such a right may be shared between beneficiar-

**1-066**

---

[231] *Vigeland v Ennismore Fund Management Ltd* [2012] EWHC 3099 (Ch) at [191]–[201].
[232] *Ulrich v Treasury Solicitor* [2005] EWHC 67 (Ch); [2006] 1 W.L.R. 33.
[233] [1981] A.C. 753, HL.
[234] *Pearson v I.R.C*, above, at 772A–773H *per* Viscount Dilhorne, 780B–782A *per* Lord Keith.
[235] [1981] A.C. 753 at 773H–774A, HL.
[236] [1981] A.C. 753 at 774G–775B, 784H–785C, HL); *R. v Walker* [2011] EWCA Crim 103; [2012] 1 W.L.R. 173 at [16]–[27].
[237] *Miller v I.R.C.* [1987] S.T.C. 108.
[238] *R v Walker* [2011] EWCA Crim 103; [2012] 1 W.L.R. 173.

ies jointly entitled to occupy a property,[239] and the right may be "dressed up" as administrative directions to the trustees which prohibit them from selling the property while the beneficiaries desire to occupy it. Such a clause is still likely to amount in substance to a dispositive provision creating an interest in possession.[240] In contrast, a beneficiary with a life interest in a residuary estate which includes real estate has no interest in possession in the land in circumstances in which the testator has directed that the land can be occupied rent free by a third party.[241] The direction in the will allowing rent free occupation was dispositive and acted to abate *pro tanto* the life interest of the beneficiary. The beneficiary of a trust of property who was given the right to occupy the property only had an interest in possession of that part which he was capable of occupying, and not that part which was subject to a lease, in circumstances in which the trust gave him no right to receive the rental income.[242]

**1-067**  A separate question arises when the trust deed includes an overriding power of appointment, as it did in *Pearson v I.R.C.*[243] The existence of a power of appointment or revocation does not prevent a beneficiary having a present right to present enjoyment of the income from the trust, although if it is exercised then the beneficiary will of course lose that interest. Unless and until it is exercised, however, the beneficiary has an interest in possession.[244] Forfeiture provisions, including those governing protective trusts under section 33 of the Trustee Act 1925, will also deprive a beneficiary of his interest in possession. Under section 33 if the principle beneficiary is absolutely entitled to receive the income from the trust (*i.e.* has a vested interest in possession) but something happens, for example his bankruptcy, which deprives him of the right to receive that income, then the trust in favour of the principal beneficiary is determined[245] and replaced by a discretionary trust of the income in favour of a class which includes the principal beneficiary.[246]

**1-068**  The sole beneficiary of a discretionary trust has no interest in possession in circumstances in which the discretionary class is not closed, even if the possibility of further entrants to the class is exceptionally remote.[247] If the discretionary class was closed then the sole beneficiary would have an interest in possession.[248] A discretionary trust which compels the trustees to distribute the income does not create an interest in possession in any one object of the trust because even if there is only one object of the exhaustive trust, the object has no interest in the income, only a right to have the trust properly administered.[249]

**Reversionary interests**

**1-069**  The term 'reversionary interest' is sometimes used to describe an interest that reverts to the settlor upon the death of a life tenant (*e.g.* A settles property on trust

---

[239] *Woodhall v I.R.C.* [2000] S.T.C. (S.C.D.) 558; [2001] W.T.L.R. 475.
[240] *I.R.C. v Lloyds Private Banking Ltd* [1998] S.T.C. 559 at 566A, *per* Lightman J.
[241] *Oakley v I.R.C.* [2005] S.T.C (S.C.D.) 243; [2005] W.T.L.R. 181.
[242] *Cook v I.R.C.* [2002] S.T.C (S.C.D.) 318; [2002] W.T.L.R. 1003.
[243] [1981] A.C. 753, HL.
[244] [1981] A.C. 753 at 774C–D.
[245] Trustee Act 1925, s.33(1)(i).
[246] Trustee Act 1925, s.33(1)(ii). For forfeiture, see §§ 6-185 onwards.
[247] *Re Trafford's Settlement* [1985] Ch. 32.
[248] [1985] Ch. 32 at 38E–39E.
[249] *Sainsbury v I.R.C.* [1970] Ch. 712 at 724–725; *Re Weir's Settlement Trusts* [1971] Ch. 145 at 166D– 167B.

for B for life, then back to A), but it can be used to refer to any interest in remainder, being an interest under a trust which is postponed until the termination of a preceding interest. Section 47 of the Inheritance Tax Act 1984 defines a reversionary interest as:

> "a future interest under a settlement, whether vested or contingent (including an interest expectant on the termination of an interest in possession which, by virtue of section 50 below, is treated as subsisting in part of any property) …".

A reversionary interest is excluded property if the relevant conditions in section 48 of the Act apply, and the reversionary beneficiary can gift his interest *inter vivos* or by will without inheritance tax being chargeable in respect of the transfer.[250]

A reversionary interest may be vested and not subject to any condition, or it may be vested subject to divestment, or it may be a contingent reversion or "contingent remainder". If property is held on trust "for A for life, then to B" then B has a vested and indefeasible reversionary interest in the trust; if the trust is held "for A for life, then to B, but if B should predecease A then to C" then B has an vested interest in remainder, subject to divestment if he should predecease A; or if property is held on trust "for A for life, then to B if he should attain 21" then B's reversionary interest is contingent on him reaching 21. Any contingent reversionary interest must comply with the rule against perpetuities, *i.e.* the interest must vest within the perpetuity period.[251]

**1-070**

Ordinarily, a reversionary interest is one which is postponed behind that of a life interest. In such cases, the reversionary beneficiaries may have a vested interest liable to be divested either partially or entirely, for example where property is left to A for life and then to A's children in equal shares such that the birth of further children will reduce the existing children's shares. It is possible, if the remainder beneficiaries and the life tenant(s) unanimously consent, for the trust to be brought to an end wholly or partially under the rule in *Saunders v Vautier*.[252] While the antecedent interests remain the beneficiary with a reversionary interest has no right to the income. The interaction between the rights of a life tenant to the income and the right of a beneficiary with a reversionary interest in the capital, including the rule in *Howe v Lord Dartmouth* and *Re Earl of Chesterfield's Trusts*, is explained elsewhere.[253]

**1-071**

**Entailed interests**

*General characteristics of an entail before 1926*

Until 1926 an entail, also called an estate tail or fee tail,[254] was a form of freehold estate in land, the others being a fee simple, which was equivalent to full ownership, and a life estate. An entail was created by a settlement or will which limited

**1-072**

[250] See *Dymond's Capital Taxes* at §§ 18.100–18.600.
[251] See § 6-060.
[252] *Berry v Geen* [1938] A.C. 575 (HL) at 582F–G; *C v C (Ancillary Relief: Trust Fund)* [2009] EWHC 1491 (Fam); [2010] 1 F.L.R. 337 at [14].
[253] See Chap.23, especially §§ 23-113 to 23-185.
[254] See generally Megarry and Wade, *Law of Real Property* (9th edn) §§ 3-046 to 3-059.

land to a person in tail with remainders over.[255] Under the entail the descendants of that person, who was called a tenant in tail, stood to take the land in order of seniority after his death, themselves becoming tenants in tail so that their own interests endured only during their respective lifetimes. A common form of entail was one under which the descendants who could take were restricted to male descendants in the male line of descent in order of seniority, called a limitation in tail male, which was often followed in remainder subject to the limitation in tail male, by a limitation in tail under which all descendants could take in order of seniority. A settlement of land normally created a series of successive entails, for example for the first and every other son of the settlor in order of seniority, and then for the first any every other daughter of the settlor in order of seniority.

1-073   Save for a entail created by statute which was made unbarrable by statute,[256] a tenant in tail was entitled to bar his entail by a disentailing assurance executed as a deed.[257] If he was a tenant in tail in possession of the land, the effect of a disentailing assurance was to defeat all estates and interests under the settlement which took effect subject to his entail and to convert his entail into a fee simple,[258] so that the tenant in tail became the absolute owner and the settlement came to an end. If he was not a tenant in tail in possession, a disentailing assurance executed with the consent of the protector of the settlement had a similar effect, though did not prejudice limitations under the settlement having priority to his entail.[259] The protector of the settlement was normally the person who under the settlement was entitled in possession to an estate in the land.[260] The power of a protector to give consent was not subject to any fiduciary or other constraints and the protector was entitled to serve his own personal interests in deciding whether or not to give consent. If the tenant in tail was not entitled in possession, a disentailing assurance executed by him without the consent of the protector operated to create a base fee, that is an estate which did not destroy limitations under the settlement taking effect in remainder after his entail, and which lasted only for so long as his entail would have lasted had there been no disentailing assurance.[261] It was possible for the holder of a base fee to enlarge it into a fee simple estate in a similar way to the way in which land could be disentailed,[262] with the consent of the protector if the base fee holder was not entitled to an estate in the land in possession under the settlement.[263]

*Effect of the 1925 property legislation*

1-074   The 1925 property legislation had important effects on entails though did not alter the general characteristics of an entail described in the two previous paragraphs:

---

[255] As to the wording needed to create an entail, see § 7-087.
[256] See Fines and Recoveries Act 1833, s.18; *Robinson v Giffard* [1903] 1 Ch. 865. The terms of an unbarrable entail may, nevertheless, be varied under Settled Land Act 1925, s.64, see *Hambro v Duke of Marlborough* [1994] Ch. 158; and on s.64, see §§ 52-025 onwards.
[257] Fines and Recoveries Act 1833 which replaced a procedure for barring entails by court process, see Megarry and Wade, work cited, §§ 3-048 to 3-052.
[258] Fines and Recoveries Act 1833, s.15.
[259] Fines and Recoveries Act 1833, s.34.
[260] Fines and Recoveries Act 1833, s.22.
[261] Fines and Recoveries Act 1833, s.34.
[262] Fines and Recoveries Act 1833, s.19.
[263] Fines and Recoveries Act 1833, s.35.

CLASSIFICATION OF EQUITABLE INTERESTS UNDER TRUSTS

(1)  Since 1926 entails have not existed as legal estates and can take effect only as equitable interests which must be given effect to by the estate owner.[264] All entails existing at law on January 1, 1926 were on that date converted by statute into equitable interests,[265] which are referred to in the 1925 property legislation as "entailed interests".[266]

(2)  When the 1925 property legislation came into force on January 1, 1926, entailed interests could be created by way of trust in any property, real or personal, but only by the like expressions as those by which before 1926 a similar estate tail could have been created by deed (not being an executory[267] instrument) in freehold land, and with the like results, including the right to bar the entail either absolutely or so as to create an interest equivalent to a base fee, and accordingly all statutory provisions relating to estates tail in real property applied to entailed interests in personal property.[268]

(3)  Since 1926[269] it has been possible for a tenant in tail[270] of full age to dispose by will or codicil of all property or money subject to an entailed interest of which he is tenant in tail in possession at his death by means of a devise of bequest referring specifically either to the property or to the instrument under which it was acquired, in like manner as though he had a fee simple or absolute interest.[271] Such a disposal can apply to an entailed interest created under the Law of Property Act 1925[272] and to an estate tail created before the commencement of that Act, not to entailed interests made unbarrable by statute.[273]

(4)  In default of and subject to the execution of a disentailing assurance[274] or the exercise of the testamentary power conferred by section 176 of the Law of Property Act 1925,[275] an entailed interest (to the extent of the property affected) devolves as an equitable interest, from time to time, upon the persons who would have been successively entitled thereto if the entailed interest had, before 1926, been limited in respect of freehold land governed by the general law in force immediately before 1926 and such law had remained unaffected.[276]

---

[264]  Law of Property Act 1925, ss.1(3), 3.
[265]  Law of Property Act 1925, ss.1, 39 and Sch.1, Pt 1.
[266]  Law of Property Act 1925, s.130(7).
[267]  This is explained at § 7-002.
[268]  Law of Property Act 1925, s.130(1). Proceeds of personal estate so entailed (not being chattels settled as heirlooms) may be invested, *etc.*, as if they were capital money arising under Settled Land Act 1925, from land settled on the like trusts: see Settled Land Act 1925, ss.67(2), 73.
[269]  Law of Property Act 1925, s.176(4).
[270]  Which includes the owner of a base fee in possession who has power to enlarge the base fee into a fee simple without the concurrence of any other person, see Law of Property Act 1925, s.176(3).
[271]  Law of Property Act 1925, s.176(1).
[272]  See Law of Property Act 1925, s.130 and § 1-075.
[273]  Law of Property Act 1925, s.176(2).
[274]  See § 1-073.
[275]  See § 1-073.
[276]  Law of Property Act 1925, s.130(4); *Re Price* [1928] Ch. 579, and *Re Hope's Will Trust* [1929] 2 Ch. 136.

*Effect of the Trusts of Land and Appointment of Trustees Act 1996*

**1-075**  The Trusts of Land and Appointment of Trustees Act 1996, which came into force on January 1, 1997,[277] prohibited the creation of new entailed interests. Where a person purports by an instrument coming into operation after January 1, 1997, to grant to another person an entailed interest in real or personal property, the instrument is not effective to grant an entailed interest, but operates instead as a declaration that the property is held in trust absolutely for the person to whom an entailed interest in the property was purportedly granted.[278] If an instrument purports to grant successive entailed interests, then the first one would, in our view, confer an absolute interest and the subsequent interests would not take effect at all since they would be repugnant to the prior absolute interest. Where a person purports by an instrument coming into operation after the beginning of 1997 to declare himself tenant in tail of real or personal property, the instrument is ineffective.[279] We consider that an "instrument coming into operation" from the beginning of 1997 will include a post-1996 appointment made under a pre-1997 power,[280] and a pre-1997 will or codicil of a testator who dies in 1997 or later. The 1996 Act also repealed the statutory provision which after 1925 permitted entailed interests to be created,[281] but provided that the repeals and amendments made by the 1996 Act do not affect any entailed interests created before the 1996 Act came into force.[282]

**1-076**  There is no reason why a settlor or testator who wishes to create an entailed interest should not substantially achieve his objective, within the constraints of the rule against perpetuities, by creating trusts which have a similar effect. It would not, however, be safe for the settlor or testator simply to direct (subject to perpetuity restrictions) that the property is to be held successively for his first and other children for the like interests that they would have taken had they been granted interests in tail and had the 1996 Act never been enacted, for such wording might well be caught by the 1996 Act. The safer course would be to write out the trusts in full. We consider that it would be permissible, for example, for the settlor or testator to direct that property is during some perpetuity period to be held in trust for A for life, subject thereto in trust for A's eldest son for life with power for the eldest son by deed to enlarge his life interest into an absolute interest but only with the consent of A during A's lifetime, subject thereto on trust for the eldest son the eldest son for life with a similar power, and so on. Done this way, daughters could of course be substituted for sons as required. In practice, there are few settlors and testators who would now wish to produce trusts that would come as close as this to entailed interests.

---

[277]  Trusts of Land and Appointment of Trustees Act 1996 (Commencement) Order 1996 (SI 1996/2974).

[278]  Trusts of Land and Appointment of Trustees Act 1996, s.2(6) and Sch.1, para.5(1).

[279]  Trusts of Land and Appointment of Trustees Act 1996, s.2(6) and Sch.1, para.5(2).

[280]  Compare *Begg-McBrearty v Stilwell* [1996] 1 W.L.R. 951 (effect of statutory reduction of age of majority on Trustee Act 1925), see § 31-007.

[281]  Trusts of Land and Appointment of Trustees Act 1996, s.25(2) and Sch.4 (repeal of Law of Property Act 1925, s.130(1)-(3) and (6)).

[282]  Trusts of Land and Appointment of Trustees Act 1996, s.25(4).