# Exhibit AF

© Copyright 2024, vLex. All Rights Reserved.

# Pepper Finance Corporation (Ireland) Ltd v Michael Macken and Patricia Watson

| | |
|---|---|
| **Jurisdiction:** | Ireland |
| **Judge:** | Mr. Justice Murray |
| **Judgment Date:** | 25 January 2020 |
| **Neutral Citation:** | [2021] IECA 15 |
| **Reported In:** | [2020] 1 JIC 2501 |
| **Date:** | 25 January 2020 |
| **Court:** | Court of Appeal (Ireland) |
| **Docket Number:** | Court of Appeal Record No.: 2018/360 |

**vLex Document Id:** VLEX-861587984

**Link:** https://justis.vlex.com/vid/pepper-finance-corporation-ireland-861587984

**Text**

Between
Pepper Finance Corporation (Ireland) Ltd
Plaintiff/Respondent
and
Michael Macken and Patricia Watson
Defendants/Appellant

[2021] IECA 15

Haughton J.

Murray J.

Collins J.

Court of Appeal Record No.: 2018/360

High Court Record No.: 2013/46 S.P

THE COURT OF APPEAL

**JUDGMENT of** Mr. Justice Murray **delivered on the 25th day of January 2020**

1

. The original plaintiff in these proceedings (in which orders are sought for possession of a property comprised in Folio 11582F County Roscommon) was Danske Bank A/S trading as Danske Bank. Following her judgment of 15 June 2018 ( [2018] IEHC 356, [2019] 1 IR 677) Costello J. made an order (a) substituting Pepper Finance Corporation (Ireland) DAC ('Pepper') as plaintiff in the action and (b) setting aside a judgment obtained in the proceedings on 2 November 2015. In this appeal, Mr. Macken, contends that Costello J. erred in making the first of these orders (itself made on foot of an appeal by Mr Macken against a decision of the Master) because, he argues, Pepper had failed to adduce sufficient evidence to ground its asserted entitlement to proceed with the claim.

2

. The basis on which Pepper sought to be substituted in the case was set forth in an affidavit of one of its directors, Cormac Ryan, sworn on 31 January 2018 to ground its substitution application. In the course of that affidavit Mr. Ryan made the following relevant averments:

> (i) The application arose from the ' *sale*' of the loans and security alleged to give rise to the entitlement to the relief claimed in the action by Danske Bank, to Pepper;
>
> (ii) On 23 October 2017 Danske Bank executed a loan portfolio sale and purchase deed whereby it agreed to sell and Proteus Funding DAC ('PF') agreed to purchase certain assets (' *the purchased assets*'). The purchased assets included those loans and security. This deed was duly exhibited.
>
> (iii) That deed provided that the purchase of the assets in question was subject to the proviso that legal title to those assets shall be transferred to Pepper, which would hold those assets on trust for PF. It was averred by Mr. Ryan that ' *legal title shall be held by Pepper with beneficial title being transferred to and held by [PF]*'.
>
> (iv) On 15 December 2017 Danske Bank assigned to Pepper (insofar as not otherwise granted, conveyed, assigned, transferred and assured pursuant to certain transfer deeds and life policy assignment) all such rights, title and interest as Danske Bank may have had in the purchased assets. That deed was exhibited.
>
> (v) On 15 December Danske Bank executed a deed of transfer of charge in the form of Land Registry Form 56 whereby it transferred to Pepper as purchaser, the

charges listed there, including the charge asserted to ground the relief claimed in the action. The Form 56 was exhibited.

(vi) Mr. Ryan averred that a notification was sent to the defendants on 18 October 2017, which he described as a ' *Notification of Agreement to Sell*'. This notification was exhibited. It described PF as ' *the beneficiary*' and stated that details relating to the defendants' accounts would be provided to ' *the Beneficiary*' and that these details would be used by Pepper and ' *the Beneficiary*' for the continued administration of the defendant's accounts and for related legal and regulatory purposes. It stated (and Mr. Ryan averred accordingly):

> ' *Pepper ... will hold the benefit of your Account(s) on trust for the benefit of [PF]* '

(vii) Mr. Ryan averred that a further letter was sent to the defendants on 18 December 2017. This letter was exhibited. Mr. Ryan said that this letter outlined to the defendants ' *that, from 15 December 2017 Pepper held the benefit of the defendants' facilities ... on trust for [PF]* '. In point of fact, the letter was worded differently from that sent on 18 October. It not merely stated that Pepper held the benefit of the assets on trust for PF, but made it clear that at some point this might change:

> ' *From 15 December 2017, Pepper holds the benefit of the Account(s) and Finance Agreements on trust for [PF],* **or such other beneficiary of such trust from time to time** *...* '.

(Emphasis added).

(viii) Mr. Ryan finally exhibited a letter sent by Pepper's solicitors – Maples & Calder – on January 9 2018. The purpose of that letter was to advise the defendants of Pepper's intention to apply to be substituted as plaintiff to the proceedings. That letter *inter alia* referred to the Loan Sale Deed, and the fact that it provided that the legal title to the assets in question would be transferred to Pepper which should hold the assets on trust for PF.

3

. The essential basis for the application was then described by Mr. Ryan as follows:

> ' *as a consequence of the Deed of Assignment, the Form 56 and the Notification of Agreement to Sell, an event has now occurred since the commencement of the within proceedings whereby the interest of the Plaintiff in the Facilities, the Charge and the within proceedings has been transferred to Pepper*'.

4

. Mr. Macken swore two affidavits in response to Mr. Ryan's affidavit. There, (and insofar as relevant to the issues on this appeal) he said *inter alia* the following:

> (i) Pepper did not have *locus standi* and if they had they did not show any evidence of such standing as '*purported Trustees*';
>
> (ii) Pepper had averred that they were the purchasers of the loan and security;
>
> (iii) Pepper was not the purported purchaser of the loans and securities and, in fact, it was more likely to be '*a mere Bare Trustee*' and that the evidence Pepper had adduced merely established that they were '*merely Bare Trustees and nominees on behalf of Proteus*'.
>
> (iv) Pepper had exhibited no documentation or supporting evidence of the Trust or their powers under the Trust.

5

. Pepper did not reply to these affidavits, and the evidence I have thus summarised represented the material before Costello J. when she made the order the subject of this appeal. On the basis of the authorities to which I refer below, she concluded that, as a matter of law, the Court in application of the kind in issue was concerned only with whether the applicant had adduced evidence in a *prima facie* fashion of its entitlement, by reason of the purported assignments, to pursue the existing claim on the underlying facilities alleged to have been transferred to it. She stressed that the procedural application to substitute a new plaintiff did not determine the issue of the validity of the assignment from the plaintiff and that the Court was not rendering any adjudication upon either the validity of or efficacy of the sale agreement or of the notice given to the defendants of the assignment of the facilities and underlying security.

6

. From there, Costello J. reviewed the evidence disclosed by the affidavit of Mr. Ryan and the documentation exhibited therein. She said the following of that evidence (noting that where the Court referred to '*Proteus*' it was referring to the entity I have been describing as PF) (at para. 44):

> '… *they show that if they are valid and effective documents there has been a sale of the loans and associated securities of the defendants by Danske Bank to Proteus and that the parties agreed that the legal interest in the loans and associated securities was to be transferred to Pepper and that Proteus was to be the beneficial owner of the facilities and associated security*'.

7

. That being so, and having regard to the legal principles identified by the trial Judge, she concluded (at para. 49):

> '*I am satisfied that the applicant, Pepper, has adduced evidence on a prima facie basis that there was a sale and assignment of their loans to Pepper on 18 December 2017.* The defendants were notified by Danske Bank of the assignment of their loans to Pepper on the 18th December 2017. On this basis I conclude that the applicant is entitled to be substituted as plaintiff in these proceedings in place of Danske Bank and is authorised to continue the proceedings as plaintiff'.

8

. In advance of the hearing of this appeal, Mr. Macken swore a further affidavit disclosing additional information regarding the purported transfer of the loans and securities giving rise to this application. He derived that information from publicly available documents, a number of which he exhibited. He said that this information disclosed the following components of what he described as '*the scheme*', all of which occurred on December 15 2017:

> (i) Danske Bank sold beneficial and legal title in the relevant assets to PF;
>
> (ii) PF '*put the legal title into a Bare Trust*' to which Pepper was appointed as Trustee;
>
> (iii) Pepper signed Form 56 '*on behalf of the Bare Trust*':
>
> (iv) PF then sold all its rights, beneficial and legal, to another '*Proteus*' entity, Proteus RMBS DAC ('*PR*');
>
> (v) Pepper then transferred any and all of its rights as Trustee for and on behalf of the Bare Trust to PR;
>
> (vi) PR then converted all its rights to Notes and issued Notes. He says that this conversion nullified and expunged the individual rights, including the beneficial and legal rights, to each individual mortgage and charge. He says that PR:
>
>> '*effectively expunged the assets of the Bare Trust by the conversion and eliminated all rights, including beneficial and legal, that the Bare Trust may had briefly had earlier in the day*'.
>
> (vii) PR appointed Pepper as a Servicer on its behalf to collect monies;
>
> (viii) PF and PR both then reverted to €1 shell companies.

9

. Pepper did not file any responding evidence in advance of the hearing of this matter on January 12 2021. While it did not accept Mr. Macken's interpretation of the legal effect or consequence of the events he thus describes, it did not dispute that some elements of the transaction I have outlined above in fact occurred. In particular, it was clear (based upon the documentary evidence before the Court) that there was on December 15 a transfer of interest from PF to PR, and a subsequent conversion of that interest to notes. It is also undisputed that all of these steps occurred on the same day.

10

. This is of relevance insofar as Pepper objected to the Court receiving evidence from Mr. Macken that was not before the High Court. Specifically, it now appears that that Court was furnished with only a partial account of the transactions. The details of the transactions as contained in the affidavit evidence tendered by Mr. Ryan stopped at the signing on behalf of Pepper of the Form 56. This means that the High Court was left with the impression that PF remained the beneficial owner of the relevant assets when, on the very day that the transactions that *were* disclosed to the Court occurred, in fact it divested itself of that interest to PR, which then proceeded to create various rights in favour of the noteholders. This resulted in a situation in which Costello J. recorded in her judgment facts that were in fact untrue. Throughout her judgment the only Proteus entity to which she refers is PF (see para. 34) and she proceeds on the basis that it was PF that was the beneficial owner of the facilities and associated security (see para. 44). This was an inevitable consequence of the manner in which Mr. Ryan's affidavit was phrased. That affidavit only makes reference to PF, it makes no reference to PR and yet he avers at para. 21, in particular, of the letter of December 18 that it:

> ' *outlined to the Defendants that, from 15 December 2017, Pepper held the benefit of the Defendants' facilities* .. and all agreements relating to the Facilities, on trust for Proteus.'

11

. In point of fact – for whatever reason – the deponent does not completely record the entire of the relevant sentence from this letter of December 18. As I have quoted it above, that letter actually states that the facilities were held on trust ' *for Proteus Funding DAC or such other beneficiary of such trust from time to time'*. Costello J. correctly quotes the letter at para. 46 of her judgment. What she did not know was that at the time that letter was written ' *such other beneficiary*' had actually been identified and a transfer of some kind effected in its favour.

12

. All members of this Court fully understand how, in the course of preparing affidavits seeking to provide reasonably clear explanations of complex transactions, details can be omitted and that judgments are necessarily made as to what it is, or is not, helpful to record

on affidavit. Inevitably it may happen that with hindsight those judgments might have been made differently. However, in an application of this kind a partial explanation of a transaction – however complex it may be – should never be tendered, and the Court should be advised properly of all key elements thereof. It is striking that Costello J. went through each of the documents with which she had been provided in some detail, unaware that they disclosed only part of what occurred on December 15. It is not acceptable that the Court should be left with an impression that is false (however irrelevant a party may think the impression to be), it is doubly unacceptable that when it becomes apparent that the Court is under such a false impression that it is not corrected, and it is most surprising that when points of objection of the kind raised by Mr. Macken were presented on affidavit before the High Court and this Court, that they were not properly responded to and the features of the transaction that had not until then been disclosed, were not explained to the Court.

13

. Pepper may well have adopted the position that it was not proposing to respond to the affidavit sworn by Mr. Macken for the purposes of this appeal because he did not have liberty to deliver fresh evidence. However, given that Pepper should itself have outlined the essential elements of the transaction to the High Court, there can be no objection to Mr. Macken ensuring that this Court has a complete picture of the various steps that occurred on that date. That being so, it was less than satisfactory that the Court was not provided at the first hearing of this matter with any clear explanation by Pepper of the legal effect of these various transactions.

14

. In the course of that hearing on January 12 the issue was raised by the Court as to whether a *Perfection Triggering Event* as defined in the prospectus issued in connection with the notes issued had occurred. Such an event would, pursuant to the provisions of that prospectus, have divested Pepper of any legal interest it then held. Pepper was requested to address this matter by affidavit and such an affidavit (sworn by Seamus Dowling, head of primary servicing with Pepper) was prepared and an unsworn copy of it was delivered on January 18 2021. This was relied upon by Pepper at the adjourned hearing of this appeal on January 21. There, Mr. Dowling said the following:

> (i) that no such triggering event had occurred and that Pepper was ' *the Legal Title Holder*';
>
> (ii) that Pepper remains the legal title holder and was such as of the date of the substitution application;
>
> (iii) that the transfer of beneficial interest to PR ' *was not in focus at the time of seeking to substitute the Plaintiff ... into these proceedings*'. That transfer, he says ' *remains immaterial for the purposes of the underlying application the subject of this appeal*'.

(iv) He further avers in respect of the failure at the time of the initial application to make reference to those parts of the transaction occurring *after* the filing of the Form 36 by Pepper as follows:

> ' *I say and believe and am informed that this was not part of a deliberate attempt by the Plaintiff to mislead the High Court or any party, including the Defendants, as appears to be alleged by Mr. Macken*'.

(v) He says that the transfer of the beneficial interest to PR ' *remains immaterial for the purposes of the underlying application the subject of this appeal*' suggesting that what he described as ' *the securitisation transaction*' was not ' *in focus*' at the time of the application to substitute Pepper as plaintiff.

(vi) He referred to his own affidavit sworn on 14 November 2018 for the purposes of obtaining judgment in which he stated the following:

> ' *the interest of Danske in the Facilities, the Charge and the within proceedings was transferred in December 2017 to Pepper* **which holds the benefit of same on trust for Proteus Funding DAC**' (para. 4)

(Emphasis added).

> ' *the Plaintiff ... holds the benefit of the Facilities and the Charge ... on trust for Proteus as beneficiary*' (at para. 21).

Of the latter averment, Mr. Downes said in his affidavit as delivered on January 18 ' *[t]his error was entirely inadvertent and ... was not done with the intention to mislead the Court or any party*'.

15

. The averment to which I refer at para. 14(v) fails to comply with the provisions of Order 40 rule 4 Rules of the Superior Courts, which in interlocutory applications, enables the tendering of evidence as to belief ' *with the grounds thereof*'. Mr. Dowling does not identify by whom he has been informed of the matters to which he refers.

16

. Mr. Macken replied to this affidavit in further submissions delivered on January 20. He said:

> (i) That Mr. Dowling's supplemental affidavit should be disregarded;
>
> (ii) That the prospectus exhibited by Mr. Macken in that affidavit was ' *doctored*';

(iii) That the appeal should be allowed *inter alia* because Pepper had '*misled*' the High Court '*by only revealing a small part of the transaction*' and not provided '*proper, honest and true*' evidence and that in consequence the substitution order was obtained '*through deceit*';

(iv) The effect of the foregoing was to conceal *inter alia* the '*disappearance of Pepper's entitlement to legal title*'.

17

. This sequence takes Mr. Macken to three essential points. First, he says that Pepper was only ever the Trustee to a Bare Trust, the implication being that this meant it did not have a sufficient interest to be joined as plaintiff to the case. This argument is based on a misconception. A '*bare trust*' or '*simple trust*' is a term used to distinguish some arrangements in which there has been a division of the legal and beneficial ownership of assets, from a '*special trust*'. While the authorities disclose differences of approach to the application of these definitions, the better view is that a bare trustee has no interest in the assets of the trust other than that existing by reason of the office and legal title as trustee and that such a trustee either never had active duties to perform or had ceased to be subject to such duties: '*…express trusts may be 'bare' trusts, where trustees are essentially passive recipients of the trust property without any management responsibilities*' (Keane, '*Equity and the Law of Trusts in Ireland*' (3rd Ed. 2017) at para. 10.01). In either case, the property effectively awaits transfer to the beneficiaries or at their direction (*Christie v Ovington* [1875] 1 Ch D 279). In a *'special trust'* in contrast, the trustee has special duties which require him to take an active role in administering the affairs of the trust.

18

. What is relevant for present purposes is that in a bare trust, the trustee retains a legal estate in the assets and there is at the very least a *prima facie* case that, accordingly, it is in a position to join to legal proceedings of the kind in issue here relating to those assets (see for an example of the implications of such a trust, McCracken J.'s discussion in *Bayworld Investments v. McMahon O'Brien Downes* [2004] IESC 39, [2004] 2 IR 199 at para. 20). So, the fact that Pepper is or was a '*bare trustee*' is neither here nor there insofar as this application is concerned. Even if that is a correct description of its status and relationship to the assets in issue in this case, there is at the very least a *prima facie* case that that is a sufficient estate to enable it to proceed to be joined to the case and to proceed to seek the relief claimed in this action.

19

. Mr. Macken's second point relates to the proofs for an application of this kind which, he says, Pepper has not met. Here, he advances a number of different, but related, propositions. For a start, he observes what he suggests are different explanations tendered in Mr. Ryan's affidavit of Pepper's status, noticing its description variously as a purchaser,

assignee and trustee. He contends that as one part of the scheme, on 15 December 2017 Pepper transferred any and all of its rights as Trustee for and on behalf of the Bare Trust to PR and further says that when PR converted all rights, including beneficial and legal interests, to Notes and issued Notes this conversion '*nullified and expunged the individual rights, including the beneficial and legal rights, to each individual mortgage and charge*'. He explains this proposition on the basis that the noteholders do not have any rights over the individual assets.

20

. Order 15, rule 14 Rules of the Superior Courts provides as follows:

> '*An application to add or strike out or substitute a plaintiff or defendant may be made to the Court at any time before trial by motion or at the trial of the action in a summary manner*.'

21

. Order 17, rule 4 Rules of the Superior Courts is as follows:

> '*Where by reason of death, or any other event occurring after the commencement of a cause or matter and causing a change or transmission of interest or liability, or by reason of any person interested coming into existence after the commencement of the cause or matter, it becomes necessary or desirable that any person not already a party should be made a party, or that any person already a party should be made a party in another capacity, an order that the proceedings shall be carried on between the continuing parties, and such new party or parties, may be obtained ex parte on application to the Court upon an allegation of such change, or transmission of interest or liability, or of such person interested having come into existence.*'

22

. The applicable test for the substitution of parties after a transmission of interests has occurred was explained by Kelly J. (as he then was) in *Irish Bank Resolution Corporation v Comer* [2014] IEHC 671. The Court, he said, must be satisfied that there is *prima facie* evidence of this transfer of interests having occurred. The rule, he said, does not need an '*elaborate argument*'; it simply requires sufficient evidence to justify the making of the order (at para 36). Kelly J. also discussed the onus of proof in a procedural motion of this kind. He held that it would not be in the interests of justice to make '*far reaching decisions*' concerning the efficacy and validity of the underlying sales agreement in the case (at para 43), as this would turn the action into a sort of '*mini-trial*', especially given that this is a procedural motion which can be made *ex parte* (at para 44).

23

. In *Irish Bank Resolution Corporation v Morrissey* [2014] IEHC 527 [2014] 2 IR 399 Finlay Geoghegan J. agreed that the applicant should be required to adduce sufficient *prima facie* evidence, leaving to the trial the question of whether there was adequate evidence to enable the substituted plaintiff to obtain the reliefs sought in the proceedings. While the application in issue there had been made at a different stage in the proceedings from the point at which it was made in *Comer*, she pointed out that the entitlement of the plaintiff to judgment had not been determined in either case and she applied similar principles, making an order for substitution pursuant to Order 15, rule 14. She said (at paras. 17 and 18):

> *'Insofar as the application is dependent upon facts, I agree that there should be put before the Court sufficient prima facie evidence to justify the making of the order leaving over to the trial of the action, or in this instance, any remaining issues to be tried, the question as to whether the evidence is sufficient to enable the substituted plaintiff obtain the reliefs sought in the proceedings.*
>
> *As pointed out by Kelly J. at paras. 43 and 44 of the ex-tempore judgment in Comer, that it would not be "either appropriate, or indeed in the interests of justice that on a procedural motion of this sort, far-reaching decisions concerning the efficacy and validity of the underlying sale agreement or the assignment… should be made."* Further, he expressed a view, with which I agree, that if one were to do this, it would turn the procedural application into a sort of mini-trial which is not envisaged by the Rules of Court, and in particular, the rules of the Commercial Division of the Court.'

24

. The better view is, I think, that an application of the kind in issue here is more appropriately treated as made pursuant to Order 17, rule 4. In *Irish Bank Resolution Corporation v Lavelle* [2015] IEHC 321 Baker J. accepted the submission that the purpose and effect of Order 15, rule 14 is to fix the time at which an application to add, strike out or substitute a party may be made and said that it is not an empowering provision. She further held that Order 17, rule 4 permits an application to be made to add or substitute a party who has taken a legal assignment of a loan book from the original plaintiff. On the basis that there had been a change or transmission of the interests of the plaintiff in loan facilities, she made an order in that case pursuant to Order 17, rule 4 instead of Order 15, rule 14. This conclusion was confirmed on appeal by the Court of Appeal in *Stapleford Finance Ltd v Lavelle* [2016] IECA 104.

25

. However, the clarification of the jurisdictional basis for such an application has no impact on the test, and central to that test is the meaning and import of the phrase ' *prima facie*

*evidence'*. As McMenamin J. observed in *Ulster Bank v. O'Brien* [2015] IESC 96 [2015] 2 IR 656 (at para. 2) as a general principle, a *prima facie* case will be made out when, on the evidence available, it would be open to a tribunal of fact, if no other evidence was given, or if that tribunal accepted that evidence even though contradicted in its material facts, to enter a verdict for that party (citing *O'Toole v. Heavey* [1993] ILRM 343 at p. 344). These decisions are directed to a *prima facie* case in contexts and for purposes different from those at issue here – the sufficiency of a case to withstand an application for a direction (as in *O'Toole v. Heavey*) or to sustain an application for summary judgment (the issue in *O'Brien*). However, the essential definition is the same.

26

. When applied to the discrete issue presenting itself in this case, what this means is that the party seeking to be substituted as plaintiff has produced evidence capable of substantiating its claim that it has legal title to the assets in question so to enable it to sustain a claim for the relief sought in the action and to enable the trier of fact to determine that issue in its favour at hearing. It might be usefully aligned to the test applied in deciding whether a claim is sufficiently stateable at law to withstand a dismissal application under either Order 19 Rules of the Superior Courts or the inherent jurisdiction of the Court. The Court is not concerned to establish whether the plaintiff *will* prove its claim, but whether it has adduced a sufficiently cogent case that it should be permitted to do advance it. As Kelly J. put it in *IBRC v. Comer* ' *[i]n order to come within the relevant rule of court, there has to be evidence adduced which would justify the substitution of the existing plaintiff"* by the applicant. Consistently with the position stated in the authorities that it is not the function of the Court in an application of this kind to embark upon a detailed inquiry into the facts or to resolve disputed issues of fact, the fact that there is other evidence appearing to contradict that evidence adduced and relied upon by the applicant does not mean that it has not established a *prima facie* case: the resolution of those conflicts is a matter for the ultimate trier of fact.

27

. As applied to this case, the evidence adduced by Pepper in the grounding affidavit of Mr. Ryan laid the foundation for a *prima facie* case that it had legal title to the assets in question. The affidavit sworn by Mr. Dowling unequivocally asserts that this remains the position. The fact that Pepper's status was variously, and at points differently, described does not affect the issue of whether, as a matter of *prima facie* proof it held legal title to the assets. The documents that have been submitted to the Court by Mr. Macken and considered by it do not in any clear or certain way establish that Pepper divested itself of its legal interest when the transfer to PR or the issuing of the notes occurred. Both of these transactions appear capable of occurring without a divestment by Pepper of that legal interest, and Mr. Macken pointed to no provision of the documents supporting his assertion that such a divestment had taken place. Insofar as the Court is concerned only with whether Pepper has established a *prima facie*case, Pepper's position is consistent with the assumption in the prospectus that such an interest had been retained and would be

divested on the happening of a '*Perfection Trigger Event*' which, as I have observed, its witness has averred has not occurred.

28

. Of course, I stress, Mr. Macken may be proven correct at the end of the day. It may well be that when properly construed the effect of the arrangements put in place to acquire the assets from Danske Bank was that Pepper either never acquired a proper legal title or, if it did, was subsequently divested of that interest. It is not surprising that the fact that Pepper chose to withhold from the Court at the time of the application for substitution the entire picture and was clearly intending not to volunteer a complete description of the transaction when seeking the relief claimed in the proceedings has fuelled Mr. Macken's suspicion that this was what happened. However, there is no version of the law by which the Court could assume the function of determining these issues on an application of this kind. Even if there was evidence supporting these suggestions, the Court cannot adjudicate upon a dispute as whether any such evidence should be preferred to the affidavit evidence confirming the retention by Pepper of such a legal interest.

29

. In that regard it is critical to emphasise that the reason the threshold for proof of an interest sufficient to sustain an application of this kind is so low, is that the defendant has the right to contest in full the existence of such an interest at the trial of the action. The position was explained by Barniville J. in the course of his judgment in. in *AIB v McKeown*, [2020] IEHC 155 at para 72:

> '*It seems to me that ... the normal position is that the court decides an application to substitute or add a party under O. 17, r. 4 RSC on the basis that a prima facie case must be established by the applicant for such an order.* That is the standard to be applied where it would be open to the opposing party (normally the defendant to the proceedings) to raise issues in relation to the assignment or transfer of the facilities in question at the subsequent enforcement stage. However, where that opportunity does not exist, the court will adopt the higher standard of the balance of probabilities.'

30

. In this case, having regard to the unusual manner in which information relating to the transaction was disclosed and to the contentions which Mr. Macken has signalled he proposes to make in relation to Pepper's interest in those assets, it follows that he must have a full opportunity to make that case at trial. For my part I find it difficult to see how he could do so on these facts without having the entitlement to cross-examine both Mr. Ryan and Mr. Dowling, the latter of whom, as he now accepts in his latest affidavit, not merely failed to make a complete disclosure to the High Court of the details of the transaction in his affidavit grounding the application for substantive relief, but actually

incorrectly identified the beneficial owner of the assets in that affidavit. Presumably Mr. Dowling will now have to swear a corrective affidavit addressing this error before the trial of the matter. The High Court will have to adjudicate in these changed circumstances on any application Mr. Macken makes to respond on affidavit.

31

. That Pepper persisted before the High Court in objecting to Mr. Macken cross examining these deponents is one of a number of surprising features of its approach to the case. It was my understanding from counsel's comments at the second day of this appeal (on January 21) that Pepper *now* accepts that Mr. Macken is entitled to cross-examine as to issues of fact in dispute between the parties. The question of whether Pepper has an interest in the assets in question sufficient to allow it claim the relief sought is, it follows from what I have said, properly in dispute. It should also be recalled in this context that, these proceedings being brought by special summons, Mr Macken is presumptively entitled to cross-examine Pepper's deponents. Any departure from that position has to be justified by Pepper. In the circumstances set out above, and having regard to the concessions made by Pepper, it is difficult to see any basis on which the High Court could be invited to depart from the general rule in Order 38, Rule 3.

32

. Mr. Macken's third point is this. As I have noted, he makes the case that the Court should remit the matter for the High Court to determine the application afresh based on the new information he has adduced before it. There are two related bases on which the Court might do this. One is that Pepper, not having disclosed all relevant information to the High Court at the time of the original application, should be compelled to re-present the application so that the High Court can determine the issue of substitution *de novo* based on all relevant information. The second is that the High Court order should be vacated by way, effectively, of sanction on Pepper for proceeding with the application on the basis of that partial information. In advancing this argument, Mr. Macken stresses that the proceedings concern the family home occupied by him, the second defendant and their daughter.

33

. I have given careful consideration to whether the Court should determine the application in this way. I have come to the view that in the circumstances of this application, it is not appropriate to adopt this course of action. The terminus of that course of action is a further hearing in the High Court on the substitution application in which Mr. Macken seeks to conduct an exhaustive and detailed analysis of the transactions by which Pepper alleges it acquired the interest on foot of which it seeks to proceed with the case. This is precisely what the authorities make clear should *not* occur in such an application. While Mr. Macken has identified many routes by which he contends that in fact Pepper does not have a sufficient interest to maintain this claim, he has identified none by reference to which it

could be determined that it did not have a *prima facie* basis for claiming that it had such an interest. The documentation before the Court, the averments Pepper have made and the fact that at some point Pepper had vested in it a legal interest in the assets, combine to present a stateable basis on which the High Court could reach the conclusion that Pepper enjoys sufficient interest in the assets the subject of these proceedings, to maintain them.

34

. In these circumstances, and having regard to the fact that Mr. Macken will have the entitlement to raise all of these issues at trial, remitting the matter in this way and for this purpose would involve a use of Court time and resources which I do not believe could be justified. I would approach the matter differently if I was satisfied that either (i) the information was withheld from the Court as part of a deliberate stratagem to ensure that the subsequent parts of the transaction were concealed from it, and/or (ii) that the production of that information at the time of the original substitution application might have resulted in a different outcome. Having regard to the evidence that has been tendered by Pepper on affidavit I could not reach the first conclusion without oral evidence and cross examination and having regard to the conclusion I have reached above, and taking into account the relatively low threshold that Pepper has to surmount at this stage, I am not persuaded of the second. While I am acutely conscious in reaching this conclusion of the critical importance to Mr. Macken and his family of the issues presented in these proceedings those interests are not prejudiced by allowing the High Court to hear and determine Pepper's claim. He will, as I have stressed, have a right to agitate in full at the hearing of this matter his contention that Pepper has no entitlement to the relief claimed.

35

. In conclusion, this appeal should be dismissed. However, the manner in which information relating to these transactions was disclosed to the High Court was most unsatisfactory, and it was understandable that Mr. Macken sought to pursue an appeal based upon the information he had obtained which was not, but ought to have been, put before the High Court Judge. For this reason, and as a mark of its disapproval of the manner in which this application and the initial hearing of this appeal were addressed by Pepper, it is my view that an Order should be made (i) discharging the order for costs made against Mr. Macken in the High Court and (ii) ordering that Pepper discharge Mr. Macken's costs and expenses incurred in connection with this appeal.

36

. Haughton J. and Collins J. are in agreement with this judgment and the order I propose.