IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| VALTRUS INNOVATIONS LTD. and KEY PATENT INNOVATIONS, LTD., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § | CIVIL ACTION NO. 2:24-CV-00021-JRG |
| SAP AMERICA, INC. and SAP SE, | § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) Defendants SAP America, Inc. and SAP SE's (collectively, "Defendants" or "SAP") Motion for Intra-District Transfer Under 28 U.S.C. § 1404(a) (Dkt. No. 22, the "Motion to Transfer"), and (2) Defendants' Motion to Stay Case Pending Rulings on Motion to Dismiss for Lack of Standing and Motion to Transfer (Dkt. No. 76, the "Motion to Stay" and with the Motion to Transfer, the "Motions"). Having considered the Motions, the associated briefing, and all documents submitted in support thereof, the Court finds that the Motions should be **DENIED**.

## I.    INTRODUCTION

On January 15, 2024, Plaintiff Valtrus Innovations Ltd. ("Plaintiff"[1] or "Valtrus" and with Defendants, the "Parties") filed suit, accusing Defendants of infringing U.S. Patent Nos. 6,823,409, 6,889,244, 7,152,182, 7,313,575, 6,691,139, 7,936,738, and 6,871,264 (the "'264 Patent") (collectively, "the Asserted Patents"). (Dkt. No. 1 ¶¶ 30–75.) Specifically, Plaintiff alleges that the following products infringe one or more of the Asserted Patents: SAP HANA, SAP HANA on AMD EPYC, SAP Cloud Integration, SAP Data Services, and SAP Business Network Asset

---

[1] After Defendants filed the Motion to Transfer, the Court granted Plaintiff leave to amend its complaint to add Key Patent Innovations, Ltd. as a co-plaintiff. (Dkt. No. 83.)

Collaboration. (Dkt. Nos. 1-8–1-13). Plaintiff also alleges that venue is proper before this Court. (Dkt. No. 1 ¶¶ 27–29.)

On March 20, 2024, Defendants filed the Motion to Transfer. (Dkt. No. 22.) In the Motion to Transfer, Defendants request that the Court order an intra-district transfer of this case to the Sherman Division of the Eastern District of Texas under 28 U.S.C. § 1404. (Dkt. No. 22 at 1.) Soon thereafter, the Court ordered venue discovery. (Dkt. No. 29.)

## II.    LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze private and public factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963). "A motion to transfer venue pursuant to § 1404(a) should be granted if the movant demonstrates that the transferee venue is *clearly more convenient*, taking into consideration" the private and public factors. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis added and cleaned up).

While the plaintiff's choice of venue is entitled to deference, it is "not an independent factor." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's elevated burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315. Also,

though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.*

### III.   ANALYSIS

#### A.   The Motion to Transfer (Dkt. No. 22)

##### 1.   The Suit Could Have Been Filed in the Sherman Division

Defendants argue that this case could have been filed in the Sherman Division of the Eastern District of Texas. (Dkt. No. 22 at 7.) Plaintiff does not dispute such, and the Court agrees with Defendants.

##### 2.   Private Interest Factors

The private interest factors include: (i) the relative ease of access to sources of proof; (ii) the availability of compulsory process to secure the attendance of witnesses; (iii) the cost of attendance for willing witnesses; and (iv) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

###### a)   Relative Ease of Access to Sources of Proof

"When the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (cleaned up) (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)). Courts should also consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

According to Defendants, they have two offices located in the Sherman Division which maintain "relevant documents concerning issues of infringement, invalidity, and damages." (Dkt. No. 22 at 8.) Defendants argue that no documents are located or accessible in the Marshall

Division. (*Id*.) Further, Defendants argue speculatively that Plaintiff's licensing agent, Patent Platform Services LLC ("PPS"), and the former owner of the Asserted Patents, Hewlett Packard Enterprise ("HPE"), may likely have relevant documents in their Sherman Division-based offices. (*Id*.)

Plaintiff argues that where, as here, relevant documents are stored electronically and there is no physical evidence in the potential transferee venue, this factor is neutral. (Dkt. No. 41 at 6.) Instead of maintaining documents in the Sherman Division, Plaintiff argues that Defendants admit that they store and maintain documents relating to the design and development of the Accused Products in Germany and India. (*Id*.; Dkt. No. 22 at 8 n.3 ("SAP also stores and maintains documents relating to the design and development of the Accused Products in Germany and India.").) Notably, Defendants have failed to identify any Texas-based servers. (Dkt. No. 41 at 6.) With respect to PPS, Plaintiff argues that most relevant documents are in New Jersey, Pennsylvania, and/or hosted on third-party Microsoft servers. (*Id*. at 7.) Regarding HPE, its worldwide headquarters is in Spring, TX—which is closer to the Marshall Division than the Sherman Division. (*Id*.)

Defendants do not dispute that the relevant documents are electronic. Also, Defendants do not identify any document custodians or servers located in the Sherman Division. Defendants further admit that they "store[] and maintain[] documents relating to the design and development of the Accused Products in Germany and India." (Dkt. No. 22 at 8 n.3.) A court in the Western District of Texas recently considered a similar situation. In *SVV Technology Innovations, Inc. v. Acer Inc.*, the Western District of Texas court found this factor neutral because

> Acer's only argument as to why this factor should favor transfer is based on Acer America's presence in the NDCA, and thus its access to sources of proof there. Considering that Acer does not contend that any design or development takes place in the NDCA, nor does it allege the location of Acer America's servers, the

> categories of information stored on its servers, or whether there is any physical
> documentation located in the NDCA, the Court accords this argument little weight.
> To be sure, Acer acknowledges that its documentary evidence, such as product
> specification and design documents, is in Taiwan. Evidence stored or accessed from
> Taiwan is thus neutral for purposes of this factor.

No. 6:22-CV-00639-ADA, 2023 WL 2764765, at *7 (W.D. Tex. Apr. 3, 2023) (citation omitted).

The Court agrees with the *SVV* court's analysis of this factor and finds it applicable to this case.

Evidence stored or accessed from Germany and India is neutral for purposes of this factor.

Accordingly, this factor is neutral.

### b) The Availability of Compulsory Process

The availability of compulsory process or subpoena power to secure the attendance of

unwilling witnesses "receives less weight when it has not been alleged or shown that any witness

would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (citations omitted). The

Fifth Circuit has recently reiterated that access to compulsory process for non-party witnesses is

the "gravamen" of this factor. *See Bruck*, 30 F.4th at 434 (citing *Garrett v. Hanson*, 429 F. Supp.

3d 311, 318 (E.D. Tex. 2019)).

Here, Defendants fail to show or even allege that any witnesses would be unwilling to

testify in this case. (Dkt. Nos. 22 at 11–13, 45 at 2–3.) Instead, Defendants (1) speculate that

"[n]on-party witnesses, if any, are almost certainly located closer to the Sherman Division than to

this Division" (Dkt. No. 22 at 12), and (2) attempt to shift the burden to Plaintiff to identify

unwilling witnesses within the Marshall Division (Dkt. No. 45 at 12). However, Defendants do

not specifically identify any non-party witnesses. Instead, Defendants simply argue that "SAP,

HPE, and PPS, each have offices within the Sherman Division, therefore, it is likely that unwilling

witnesses, such as former employees, are likely to reside within the Sherman Division's 100-mile

subpoena radius." (*Id*.)[2] On the other hand, Plaintiff similarly fails to specifically identify unwilling witnesses within the Marshall Division's 100-mile subpoena radius. (Dkt. No. 41 at 7–9.) Plaintiff relies upon the proximity of two potentially relevant third parties (HPE and Advanced Micro Devices, Inc.) that "maintain a substantial presence north of Houston, which is closer to Marshall than to Sherman." (*Id*. at 8–9.)

Both Parties' failure to specifically identify *any* unwilling witnesses—whether within the subpoena power of either division or not—ends this inquiry. As another court in this District has found, this factor is neutral where "neither party asserts that any non-party witness is unwilling to attend trial." *R2 Sols. LLC v. Databricks Inc.*, No. 4:23-CV-01147, 2024 WL 4932719, at *4 (E.D. Tex. Dec. 2, 2024). Indeed, the Fifth Circuit has stated that it "cannot say that the district court committed a clear abuse of discretion in holding that this factor is neutral when petitioners have failed to identify any unwilling non-party witness." *In re TikTok, Inc.*, 85 F.4th at 361. Accordingly, the Court finds that this factor is also neutral.

### c)    The Cost of Attendance for Willing Witnesses

The Fifth Circuit "uses a '100-mile threshold' in assessing this factor." *In re TikTok, Inc.*, 85 F.4th at 361. "When the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to the witnesses increases in direct relationship to the additional distance to be traveled." *Id*. (quoting *Volkswagen II*, 545 F.3d at 317). However, courts do not just consider how long and far a witness must travel—courts also may consider costs such as "meal and lodging expenses; and absence from work, family, and

---

[2] Defendants also identify a Mr. Philip Jones of Georgetown, Texas as a potential non-party witness who is a named inventor on one of the Asserted Patents. (Dkt. No. 22 at 12.) However, Plaintiff disputes that Mr. Jones is in fact an inventor or a relevant witness. (Dkt. No. 41 at 8.) Defendants abandon their argument that Mr. Jones is relevant in their reply brief. Based upon the Parties' submissions, the Court agrees with Plaintiff that the Mr. Jones identified by Defendants does not appear to be a relevant witness. Further, Defendants' assertion that "it is likely that unwilling witnesses . . . are likely to reside within the Sherman Division's 100-mile subpoena radius" (Dkt. No. 22 at 12) is simply speculation which has no bearing on meeting the burden of clearly more convenient.

community." *In re Clarke*, 94 F.4th 502, 514 n.20 (5th Cir. 2024) (citing *TikTok*, 85 F.4th at 361). This factor "attempts to internalize and minimize those costs by favoring the venue that is more convenient from the perspective of willing witnesses." *Id.* at 514.

Defendants argue that "two SAP employees, Mr. [Srikkanth] Tumu and Mr. [Sudhir] Padakal, have potentially relevant knowledge about the operation of the Accused Products and are located within the Sherman Division." (Dkt. No. 22 at 10.) Yet Defendants admit that "[a]ll other SAP witnesses knowledgeable about the Accused Products are located outside of Texas," specifically: Germany, India, California, and Canada. (*Id*.) Defendants further argue that Ms. Kapu Kumar, the Founding Member and Executive Vice President of PPS who "was the primary contact during pre-litigation communications between SAP and Valtrus," and other PPS employees, are located within the Sherman Division. (*Id*. at 10–11.) Defendants argue that Plaintiff "will likely call Ms. [Angela] Quinlan as a witness at trial given her unique knowledge on issues such as the business operations of Valtrus and the acquisition and value of the Asserted Patents." (*Id*. at 11.) Finally, Defendants also argue that any of its potentially relevant witnesses located in Atlanta or Houston could more affordably travel to the Sherman Division than the Marshall Division. (Dkt. No. 45 at 3.)

Plaintiff argues that with respect to Defendants' own witnesses, Defendants have failed to identify any *trial* fact witness or corporate representative.[3] (Dkt. No. 41 at 9.) Plaintiff further argues that it only intends to call Ms. Quinlan as a trial witness and that it "does not consider Ms. Kumar or other PPS employees to be likely trial witnesses, but regardless they are willing to attend

---

[3] Defendants' references to its employees who "potentially have relevant knowledge" impermissibly invites the Court to guess whether they do or do not have relevant knowledge. No one is in a better position to know what these current employees have knowledge of than Defendants; yet Defendants will only say they *potentially* have relevant knowledge. While Defendants attempt to walk this statement back in their reply brief (Dkt. No. 45 at 3), their cited evidence does not support their position. Defendants therefore fail to meet their burden to show that identified employees *have* relevant knowledge and then go on to explain that knowledge and why it is relevant.

trial in Marshall." (*Id.* at 10.) Moreover, Plaintiff argues that Defendants employ several potentially relevant engineer technical witnesses located in Atlanta and Houston that could easily travel to Marshall, whether by flying directly to Shreveport or driving. (*Id.* at 10–11.) To the extent any witnesses need to travel internationally, "any additional inconvenience from flying to DFW and then driving to Marshall to stay at a hotel vs. flying to DFW then driving to or near Sherman to stay at a hotel is de minimis." (*Id.* at 11.) Finally, Plaintiff argues that staying in the Marshall Division would cost less than staying in the Sherman Division. (*Id.* at 12.)

As an initial matter, this factor concerns willing witnesses "*for trial.*" *TikTok*, 85 F.4th at 361 (emphasis added). While Defendants identify Messrs. Tumu and Padakal as witnesses with "potentially relevant knowledge," Defendants never state that they will be witnesses *for trial.*[4] Therefore, Messrs. Tumu's and Padakal's proximity to the Marshall Division and the Sherman Division is irrelevant. In fact, Defendants fail to identify *any of their own employee witnesses* that they expect to call for trial. Instead, Defendants only expressly identify Ms. Kumar, but she submitted a sworn declaration stating the following:

> *I am willing to travel to the Marshall Division* for trial in this matter. Should I be required to attend trial, *I would not find it inconvenient to do so*. While I do not anticipate any other Texas-based PPS employees would be called as trial witnesses, if so called, PPS will not object to and will facilitate the attendance of such witnesses to attend a trial in Marshall.

(Dkt. No. 41-2 ¶ 9 (emphasis added).) Plaintiff identified Ms. Quinlan as a likely trial witness, and she similarly submitted a sworn declaration stating the following:

> Should I be required to travel to attend trial in the United States I would likely be flying from my home in Dublin, Ireland. *I would not find it more inconvenient to travel to the Marshall Division than the Sherman Division* in connection with this litigation.

---

[4] In contrast, Defendants state that they "***intend[] to call*** Ms. Kumar from PPS." (Dkt. No. 45 at 3.)

(Dkt. No. 41-3 ¶ 11 (emphasis added).) The Court accepts Mss. Kumar's and Quinlan's statements made under penalty of perjury regarding whether the Marshall Division is "convenient." Further, Defendants should not focus on witnesses under Plaintiff's control and whether they might be inconvenienced, but rather Defendants should be focused on *their* witnesses when urging a transfer of venue.

Regarding any other potential defense witnesses, the Court finds on balance that the Sherman Division is not clearly more convenient than the Marshall Division. As Plaintiff correctly states, Houston-based witnesses have the option to drive to the Marshall Division or fly to the Shreveport airport. Similarly, Atlanta-based witnesses could fly to the Shreveport airport, which is a shorter flight than to DFW. Regarding the California-based and international potential witnesses, "the Federal Circuit has cautioned not to give 'too much significance' to travel inconvenience when the witnesses will be traveling a significant distance." *Athalonz LLC v. Under Armour, Inc.*, No. 2:23-CV-00193-JRG, 2023 WL 8809293, at *8 (E.D. Tex. Dec. 20, 2023) (quoting *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020)). In view of this guidance, the Court does not give much significance to these potential California-based and international witnesses, but the Court also notes that many of these international potential witnesses would be traveling from Europe. The Marshall Division is closer to Europe than the Sherman Division. Finally, while Defendants argue that flying to DFW is cheaper than flying to the Shreveport airport (Dkt. No. 45 at 3), Defendants fail to address Plaintiff's argument that the likely cost of food and lodging is less in the Marshall Division than the Sherman Division.

In view of the foregoing, the Court finds that this factor is neutral.

### d)      All Other Practical Problems

Defendants argue that "[t]his factor is neutral because this case is in its infancy." (Dkt. No. 22 at 13.) At the time the Motion to Transfer was filed, the Court had not issued a Docket Control

Order, and infringement and invalidity contentions had not been exchanged. (*Id*.) However, Plaintiff argues that "this factor strongly weighs against transfer" because "Valtrus has six other cases pending before this Court, all concerning patents that it acquired from HPE in 2021," including the '264 Patent. (Dkt. No. 41 at 12–13.)

As Defendants acknowledge, Plaintiff is correct—at the time the Motion to Transfer was filed, Plaintiff had filed a co-pending case where it also asserted the '264 Patent. *Valtrus Innovations Ltd. v. AT&T*, No. 2:23-cv-00443-JRG, Dkt. No. 1 ¶¶ 76–83 (E.D. Tex. Sept. 27, 2023). The Court had also entered a Docket Control Order in that case setting, amongst other things, a *Markman* hearing for December 4, 2024. *Id*., Dkt. No. 48 (Dec. 20, 2023). Therefore, this Court would have familiarized itself with Plaintiff, at least one overlapping patent, and other substantive issues such as standing, well in advance of subsequent proceedings in the above-captioned case.[5] While the Court had not considered substantive filings in *Valtrus Innovations Ltd. v. AT&T* by the time the Motion to Transfer had been filed, the potential future efficiencies achieved with keeping this case in this Court weigh against transfer. *In re: NetScout Sys., Inc.*, No. 2021-173, 2021 WL 4771756, at *5 (recognizing "that judicial economy can serve important ends in a transfer analysis"). Accordingly, the Court finds that this factor weighs slightly against transfer.

### 3.    Public-Interest Factors

The public factors include: (i) the administrative difficulties flowing from court congestion; (ii) the local interest in having localized interests decided at home; (iii) the familiarity of the forum with the law that will govern the case; and (iv) the avoidance of unnecessary problems of conflict

---

[5] The Court acknowledges *Valtrus Innovations Ltd. v. AT&T* has been closed and all defendants have been dismissed from the case. However, precedent requires the Court to consider the state of this case at the time the Motion to Transfer was filed.

of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

### a)    Administrative Difficulties Flowing from Court Congestion

This factor focuses on "docket efficiency." *Planned Parenthood*, 52 F.4th at 631. It normally weighs against transfer when the "case appears to be timely proceeding to trial." *Id.*

Defendants argue that this factor is neutral because the median time to trial in this Court is comparable to the median time to trial in courts in the Sherman Division. (Dkt. No. 22 at 14.) Plaintiff responds that this factor weighs against transfer because "[t]his case is smoothly proceeding and set for trial on September 22, 2025." (Dkt. No. 41 at 14.)

Plaintiff is correct that the case was (and continues to be) "smoothly proceeding" to trial when Defendants filed the Motion to Transfer. Accordingly, this factor weighs slightly against transfer.

### b)    The Local Interest in Having Localized Interests Decided at Home

This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Volkswagen I*, 371 F.3d at 206. Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *Volkswagen II*, 545 F.3d at 318.

Defendants argue that "the Sherman Division has a more legitimate interest in resolving this dispute (relative to the Marshall Division) because at least some of the events relevant to this case occurred there." (Dkt. No. 22 at 14–15.) Specifically, Defendants contend that (1) pre-litigation communications occurred in the Sherman Division, (2) SAP, HPE, and PPS have offices located in the Sherman Division, and (3) several potential witnesses are in the Sherman Division. (*Id.*) In response, Plaintiff argues that Defendants' arguments are "legally irrelevant" and contrary

11

to the facts, which indicate that the Marshall Division has a local interest because Defendants have customers in this Division. (Dkt. No. 41 at 13–14.)

Plaintiff is correct that the pre-litigation communications are irrelevant because under this factor, the Court must consider "the significant connections between a particular venue and the events *that gave rise to a suit*." *In re TikTok, Inc.*, 85 F.4th at 364 (emphasis added). Pre-litigation communications did not give rise to this suit—it is the underlying acts of patent infringement that gave rise to this suit. However, this factor slightly favors transfer because Defendants do have offices in the Sherman District and "potential jurors in the Sherman Division have a greater interest in adjudicating the rights of businesses that have a material physical presence in their immediate community." *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *6 (E.D. Tex. June 21, 2021). The Court finds that this factor slightly weighs in favor of transfer.

### c) The Familiarity of the Forum with the Law that Will Govern the Case

The Parties agree that this factor is neutral. (Dkt. Nos. 22 at 15, 41 at 14.) The Court agrees.

### d) Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law

Defendants state that this factor is neutral. (Dkt. No. 22 at 15.) However, Plaintiff disagrees and argues that this factor weighs against transfer. (Dkt. No. 41 at 15.) Specifically, Plaintiff restates that there is a risk of conflicting decisions regarding the '264 Patent if the case is transferred while the co-pending case in which Plaintiff asserted the '264 Patent remains before this Court. (*Id.*)

The Court agrees with Defendants that Plaintiff is attempting to shoehorn facts and arguments relevant to the private interest factors into this public interest factor. (Dkt. No. 45 at 5.) The Court rejects Plaintiff's arguments in this regard and finds that this factor is neutral.

### 4.    Conclusion

In view of the foregoing factors, the Court must determine whether the Sherman Division is "clearly more convenient" than the Marshall Division. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d at 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id*. Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id*. When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Id*. ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found that five factors weigh neutrally, two factors weigh slightly against transfer, and the remaining factor weighs slightly in favor of transfer, the Court concludes that the Sherman Division is not a "clearly more convenient" forum for this dispute. The Court reaches this conclusion by considering the weight of the specific factors and facts of this case. Having done so, the Court is of the opinion that the Motion to Transfer (Dkt. No. 22) should be denied.

**B.       The Motion to Stay (Dkt. No. 76)**

In the Motion to Stay, Defendants request that the Court stay the above-captioned case until it has ruled on the Motion to Transfer and Defendants SAP America, Inc. and SAP SE's Motion to Dismiss for Lack of Standing Pursuant to Rule 12(b)(1) and Rule 12(b)(6) (Dkt. No. 51, the "MTD"). (Dkt. No. 76 at 1–2.) As stated above, the Court finds that the Motion to Transfer should be denied. Also, the Court previously issued a Memorandum Opinion and Order that Granted-in-Part and Denied-in-Part the MTD. (Dkt. No. 83.)

As the Court has ruled on the Motion to Transfer and the MTD, the Court finds that the Motion to Stay should be denied as moot.

## IV.    CONCLUSION

For the reasons noted above, the Court finds that the Motion to Transfer (Dkt. No. 22) should be and hereby is **DENIED**. The Court further holds that the Motion to Stay (Dkt. No. 76) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 13th day of December, 2024.**

_____
RODNEY   GILSTRAP
UNITED STATES DISTRICT JUDGE