# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **VALTRUS INNOVATIONS LTD. and KEY PATENT INNOVATIONS LTD.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**SAP AMERICA, INC. and SAP SE,**<br><br>*Defendants*. | **Civil Action No. 2:24-cv-021 (LEAD CASE)**<br><br>**JURY TRIAL DEMANDED** |
| **VALTRUS INNOVATIONS LTD. and KEY PATENT INNOVATIONS LTD.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**SAP AMERICA, INC. and SAP SE,**<br><br>*Defendants*. | **Civil Action No. 2:24-cv-533 (MEMBER CASE)** |

**DEFENDANTS SAP AMERICA, INC. AND SAP SE'S MOTIONS *IN LIMINE* NOS. 1-5**

# TABLE OF EXHIBITS

| No. | Description |
|---|---|
| 1 | ■■■■ |
| 2 | ■■■■ |
| 3 | ■■■■ |
| 4 | ■■■■ |
| 5 | ■■■■ |
| 6 | ■■■■ |
| 7 | The Court's SEtanding Order on Motions *in Limine* in Cases Involving Allegations of Patent Infringement and/or Breach of FRAND Obligations, as well as Declaratory Judgment Actions Which Relate to the Same |
| 8 | ■■■■ |
| 9 | ■■■■ |
| 10 | The Patent Trial and Appeals Board's Decision Denying Institution of *Inter Partes* Review (July 10, 2025) |
| 11 | Petitioners' Motion to Terminate *Inter Partes* Review (June 25, 2025) |

# **TABLE OF CONTENTS**

**Page**

I.  MOTION *IN LIMINE* NO. 1: Exclude evidence, argument, testimony, inference, or speculation on a corporate representative's lack of knowledge outside of personal knowledge or FRE 30(b)(6) topics. ................................................................................... 1

II. MOTION *IN LIMINE* NO. 2: The parties shall not make reference to the burden of proof in a different area of law (e.g., the burden of proof required to commit an individual to an institution, revoke parental rights, or terminate life support), during opening, closing, or the presentation of evidence. .................................................................................................. 2

III. MOTION *IN LIMINE* NO. 3: Exclude evidence, testimony, argument, inference, and speculation that SAP violated any laws or has any effect on Plaintiffs outside the specific allegations in this case (e.g., no antitrust violations, no irreparable harm, no holdout effect on other licensees, etc.). ......................................................................................................... 3

    A. Plaintiffs' suggestion that SAP violated any laws is improper. ............................... 3

    B. Plaintiffs' characterizations of SAP's behavior as "monopolistic" or "holding out" as a purported unwilling licensee would unduly prejudice SAP. ........................... 5

    C. Plaintiffs' attempts to malign SAP's constitutionally protected activity should be rejected. ...................................................................................................................... 7

IV. MOTION *IN LIMINE* NO. 4: Exclude all evidence, testimony, opinions, and arguments concerning financials or product usage that are unaccused or do not form the basis of Mr. Jim Bergman's conclusions. ....................................................................................... 8

V.  MOTION *IN LIMINE* NO. 5: Exclude all evidence, testimony, argument, or suggestion regarding the PTAB's IPR decisions about discretionary denial and settled expectations. 9

VI. CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayou Fleet, Inc. v. Alexander*,
  234 F.3d 852 (5th Cir. 2000) ...................................................................................................7

*Boone v. Redevelopment Agency*,
  841 F.2d 886 (9th Cir. 1988) ...................................................................................................8

*Dabico Airport Sols. Inc. v. AXA Power ApS*,
  IPR2025-00408, Paper 21 (June 18, 2025) ............................................................................10

*DataTreasury Corp. v. Wells Fargo & Co.*,
  No. 2:06-cv-72-DF (E.D. Tex. Oct. 5, 2010) ...........................................................................2

*Eaton v. Newport Bd. of Educ.*,
  975 F.2d 292 (6th Cir. 1992) ...................................................................................................8

*Ericsson Inc. v. Apple Inc.*,
  No. 2:21-CV-00376-JRG (E.D. Tex. Nov. 29, 2022) ..............................................................7

*GREE, Inc. v. Supercell Oy*,
  2021 WL 1669800 (E.D. Tex. Apr. 28, 2021) .......................................................................11

*Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*,
  878 F. Supp. 884 (E.D. La. 1995) ............................................................................................9

*Huffman v. Turner Indus. Grp., L.L.C.*,
  2013 WL 2297206 (E.D. La. May 24, 2013) ...........................................................................9

*Intellectual Ventures II LLC v. FedEx Corp.*,
  2018 WL 10638138 (E.D. Tex. Apr. 26, 2018) .......................................................................6

*Novo Nordisk A/S v. Becton Dickinson & Co.*,
  304 F.3d 1216 (Fed. Cir. 2002) ...............................................................................................5

*Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co.*,
  No. 2:23-cv-495-JRG-RSP (E.D. Tex. June 30, 2025) ............................................................1

*SB IP Holdings, LLC v. Vivint, Inc.*,
  No. 4:20-CV-886 (E.D. Tex. Oct. 11, 2023) ...........................................................................5

*Simpleair, Inc. v. Google Inc.*,
  No. 2:14-cv-0011-JRG (E.D. Tex. Oct. 6, 2015) .....................................................................8

*St. Lawrence Communc's LLC v. ZTE Corp.*,
   No. 2:15-CV-439-JRG, ECF 455 (E.D. Tex. Feb. 21, 2017) ....................................................3

*Vart Microbattery GmbH v. Audio P'ship LLC*,
   No. 2:21-CV-00400-JRG-RSP (E.D. Tex. Aug. 11, 2023) ....................................................10

*Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*,
   858 F.2d 1075 (5th Cir. 1988) ..............................................................................................7

*Vocalife LLC v. Amazon.com, Inc.*,
   No. 2:19-CV-00123-JRG (E.D. Tex. Sept. 30, 2020) ............................................................5

**Other Authorities**

Fed. R. Civ. P. 30(b)(6) ....................................................................................................................1

Fed. R. Evid. 401 ............................................................................................................................9

Fed. R. Evid. 402 .........................................................................................................................2, 9

Fed. R. Evid. 403 ............................................................................................................2, 3, 10, 11

U.S. Const. amend. I .......................................................................................................................7

I. **MOTION *IN LIMINE* NO. 1: Exclude evidence, argument, testimony, inference, or speculation on a corporate representative's lack of knowledge outside of personal knowledge or FRE 30(b)(6) topics.**

The Court should preclude Plaintiffs Valtrus Innovations Ltd. and Key Patent Innovations Ltd. from introducing evidence or suggesting that any of SAP's corporate representatives (1) have an obligation to be prepared to testify on topics for which they were not designated under Rule 30(b)(6) or (2) individually should be expected to know all information known by others in SAP. *See Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, ECF 400 at 4 (E.D. Tex. June 30, 2025) (granting a similar motion *in limine* phrased as "Exclusion of Evidence Argument, or Testimony on a Corporate Representative's Lack of Knowledge Outside of Personal Knowledge or 30(b)(6) Topics").

SAP will have corporate representatives present at trial on its behalf; each witness testifying in their individual and 30(b)(6) capacities, including about information within their personal knowledge. Plaintiffs should not be permitted to imply to the jury that a corporate representative is expected to have knowledge regarding every topic that might be relevant to the case or imply that a corporate representative is inept, unprepared, or incompetent simply because the witness does not have personal knowledge about topics on which he or she is not designated as a 30(b)(6) witness. It would be prejudicial to SAP and its ability to prepare a witness for trial if Plaintiffs could cross-examine SAP's corporate witnesses with the testimony of every corporate representative in this case.

For example, if SAP's corporate representatives work in a marketing or sales role, they should not imply that the witness should be able to testify about corporate policies for dealing with patent-infringement allegations, should know the technical details of each of the products and components at issue, or should have knowledge of every pre-suit communication between the parties. Any possible lack of knowledge of such information, which is the subject of other

1

witnesses' testimony, is not relevant to the claims at issue and would unfairly prejudice SAP. Fed. R. Evid. 402, 403; *DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72-DF, ECF 2392 at 48-49 (E.D. Tex. Oct. 5, 2010) (granting the defendants' motion seeking order that "[t]he Parties should be precluded from asserting that a person who is acting as a Party's corporate representative at trial (1) has a legal obligation to prepare to testify on any particular topic, (2) is charged with the knowledge of others within the company, or (3) has the ability to bind the Party with his or her trial testimony"). As another example, the Court should not permit Plaintiffs to ask and imply that every SAP witness has or had a duty to investigate whether SAP's products infringe Plaintiffs' patents. *See, e.g.*, Ex. 1 () at 46:7-47:9; Ex. 2 (.) at 207:7-209:11; Ex. 3 () at 226:9-229:7; Ex. 4 () at 50:8-54:7.

    **II.**    **MOTION *IN LIMINE* NO. 2: The parties shall not make reference to the burden of proof in a different area of law (e.g., the burden of proof required to commit an individual to an institution, revoke parental rights, or terminate life support), during opening, closing, or the presentation of evidence.**

The parties agree to this motion *in limine*, as well as the following instructions for *voir dire*: With respect to *voir dire*, a party may only inquire whether a potential juror's prior life experience in another area of law would interfere with the ability to apply the clear and convincing evidence standard as the Court has instructed them, if and only if a party establishes that either (1) a potential juror served as a juror previously and that case involved the clear and convincing standard, or (2) a potential juror has been involved in litigation (i.e., either as a party or a witness or as a close family member or friend of a party or witness) to a litigation that involved the clear and convincing standard. For the sake of clarity, a party may inquire generally whether members of the panel have experience in cases involving family law, divorce, or civil commitment. If any member of the panel answers affirmatively, the party may then take up any further inquiry about the nature of the case at the bench with that member and counsel present without potentially

tainting anyone else on the panel. *See, e.g.*, *Saint Lawrence Communc's LLC v. ZTE Corp.*, No. 2:15-CV-439-JRG, ECF 455 at 158:9-161:15 (E.D. Tex. Feb. 21, 2017) (ordering similar instructions).

**III.    MOTION *IN LIMINE* NO. 3: Exclude evidence, testimony, argument, inference, and speculation that SAP violated any laws or has any effect on Plaintiffs outside the specific allegations in this case (e.g., no antitrust violations, no irreparable harm, no holdout effect on other licensees, etc.).**

Within Plaintiffs' discovery responses and expert report are various intimations (or outright allegations) that SAP may violate laws not at issue in this case, harm Plaintiffs beyond any alleged infringement that the jury in this case will adjudicate, or has otherwise acted in violation of antitrust laws. Any such suggestions are well beyond the issues that this jury must adjudicate and should be excluded.

**A.    Plaintiffs' suggestion that SAP violated any laws is improper.**

Plaintiffs should be precluded from suggesting that SAP violated any privacy laws including the "███████████████████████████████████████████" Ex. 5 (Marshall Rpt.) ¶ 78. Any implication or suggestion that SAP engaged in improper or illegal conduct, when it did not, would be unfairly prejudicial to SAP. Plaintiffs assert only patent-infringement claims against SAP, and compliance with privacy laws has no bearing on any issue that the jury would decide. The introduction of any such evidence would prejudice SAP by confusing the issues, misleading the jury, and wasting time on meaningless collateral issues for which there is no proof. Fed. R. Evid. 403.

Plaintiffs appear ready to parade side tangents of irrelevant foreign law, involving unrelated third parties, before the jury, as indicated by Dr. Marshall's report. Dr. Marshall refers to SAP Data Services' implementation of ███████████ like ███████████ ███████████ Ex. 5 ¶ 78. According to Dr. Marshall, these ███████████

3

both " ███████████████████████████████████████

████████████████████████████████████████████

███████ " *Id.* Dr. Marshall then opines that breaching these rules "can result in significant fines," such as the GDPR's penalty of "€20 million or 4% of the company's total global," and Meta's €1.2 billion GDPR fine in 2023. *Id.* It seems that Plaintiffs will introduce this testimony from Dr. Marshall to suggest that but for the '575 Patent, SAP would run afoul of these privacy laws, including the GDPR, by analogizing the GDPR's penalties and Meta's violation thereof to SAP's conduct. *Id.* ¶ 82 ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████ (emphasis added)).

This evidence and testimony are highly prejudicial for several reasons. First, a jury would unfairly view SAP as careless, or worthy of punishment, because another large company, Meta, was fined for violating foreign law to the tune of €1.2 billion (about $1.4 billion). A jury could view this extraordinary fine with legitimacy since it was issued by a foreign legal body. This would significantly increase the risk that a jury will base its award of Plaintiffs' reasonable royalty on an improper comparison between their ███████ damages ask to Meta's $1.4 billion GDPR fine, suggesting that their damages request is a mere fraction (14.7%) of the penalty imposed on Meta.[1] Second, Dr. Marshall's opinion would confuse the issues and mislead the jury by infecting the trial with foreign law about a third party's violation of that foreign law. Meta and those privacy laws are not in this case as an issue for the jury to decide. And neither Plaintiffs nor Dr. Marshall presents evidence of how the GDPR or Meta's violation thereof implicates SAP.[2] Regardless, the suggestion

---

[1] Notably, Mr. Bergman does not rely on this number in his damages model.
[2] Dr. Marshall is not even a lawyer, let alone one licensed or qualified to opine on the legal intricacies of the GDPR. Ex. 5 at 33-35.

that SAP violated the GDPR and was involved in any way with Meta is wrong and inflammatory. *Novo Nordisk A/S v. Becton Dickinson & Co.*, 304 F.3d 1216, 1220 (Fed. Cir. 2002) ("Inflammatory insinuations and incorrect statements are improper, and their presentation to prejudice the jury is not condoned."). Any supposed relevance, for which there is none, is substantially outweighed by the undue prejudice SAP would experience if Plaintiffs were permitted to present any of these issues before a jury.

In at least one other case, the Court has granted an agreed motion *in limine* to exclude references to purported violations of tangential privacy laws or standards. *Vocalife LLC v. Amazon.com, Inc.*, No. 2:19-CV-00123-JRG, ECF 310 at 7 (E.D. Tex. Sept. 30, 2020) (granting "Agreen MIL No. 4: Affirmative arguments or references to privacy concerns relating to the Accused Products, *e.g.*, violating privacy laws or standards, spying on Amazon customers, or invading the privacy of Amazon customers"). The Court should similarly hold to its precedent and grant this motion *in limine* for the foregoing reasons.

**B. Plaintiffs' characterizations of SAP's behavior as "monopolistic" or "holding out" as a purported unwilling licensee would unduly prejudice SAP.**

The Court should exclude any assertion by Plaintiffs that SAP ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 6 (Valtrus ROG Resp.) at 22. Plaintiffs intend to generally imply that SAP itself, including all of its conduct, is inherently unlawful or unethical simply because of SAP's position in the market. Plaintiffs' accusations violate several portions of the Court's standing order on motions *in limine*. For example, Plaintiffs' reference to SAP's entrenchment and expansion into various markets wrongly refers to SAP's overall size. *Id.*; Ex. 7 (Standing Order on MILs) at 2 ("Court MIL No. 3: The parties shall be precluded from introducing evidence, testimony, or argument concerning any party's overall financial size, wealth, or executive compensation."). Plaintiffs could imply to the jury that this is a David-versus-Goliath

5

dispute, comparing any purported disparities between the parties. *SB IP Holdings, LLC v. Vivint, Inc.*, No. 4:20-CV-886, ECF 438 at 1-2 (E.D. Tex. Oct. 11, 2023) (Mazzant, C.J.) (granting motion *in limine* and precluding the plaintiff from making "David versus Goliath" or similar "big versus small" references about the parties and their counsel); *see also Intellectual Ventures II LLC v. FedEx Corp.*, 2018 WL 10638138, at *4 (E.D. Tex. Apr. 26, 2018) (preventing the plaintiff from "denigtrat[ing] the defendants by painting a David and Goliath scenario"). Plaintiffs' statement is also pejorative, implying that SAP is "'greedy,' 'corrupt,' 'evil,' or 'dishonest,'" and maligns SAP in a "disparaging way[]," contrary to Court MIL Nos. 9 and 11. Ex. 7 at 2-3. And Plaintiffs' unsupported characterization of SAP as "monopolistic" detracts from the issues of infringement and invalidity and improperly suggests to a jury that SAP acted illegally or anticompetitively under antitrust law and is merely a "bad actor" that should be punished.

Rather than litigating any actual issues before the Court, Plaintiffs claim that SAP's purported infringement of the Asserted Patents causes harm to Plaintiffs beyond this case. In particular, Plaintiffs assert that SAP is ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 6 at 22. Plaintiffs then claim that SAP is "▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* at 22-23. As a result, Plaintiffs contend (without support) that they are entitled to damages based on hypothetical licenses with third parties (not in this case) simply because SAP is exercising its rights to defend against Plaintiffs' infringement claims. *Id.* Plaintiffs would suggest to a jury that they are entitled to damages based on hypothetically unconsummated licenses, encouraging a jury to award damages as a form of punishment rather than as compensation for proven harm (e.g., infringement). The Court prohibits similar statements in reference to a verdict, impacting "the cost of goods or services" or having "**other commercial impacts**." Ex. 7 at 3 (Court MIL No. 19)

6

(emphasis added). And the Court has issued a sua sponte motion *in limine*, restricting a party from accusing the other as an "unwilling licensee" or as "hold[ing] out" on taking a license. *Ericsson Inc. v. Apple Inc.*, No. 2:21-CV-00376-JRG, ECF 291 at 9 (E.D. Tex. Nov. 29, 2022) (ordering sua sponte motion *in limine* that "[t]he term 'holdout,' 'holdup,' or 'unwilling licensee' will not be used before the jury by any counsel or witness without prior leave of the Court"). Likewise, the Court should reject Plaintiffs' attempts to poison the well.

### C. Plaintiffs' attempts to malign SAP's constitutionally protected activity should be rejected.

SAP has a constitutionally protected right to lobby the U.S. government. U.S. Const. amend. I (protecting "the right of the people . . . to petition the Government"). As a result, any reference to constitutionally protected behavior would be irrelevant to this case. Yet Plaintiffs probed SAP's lobbying activity during a deposition, implying such activity was for the sole purpose of targeting nonpracticing entities:



*See, e.g.*, Ex. 8 ▮▮▮▮▮ at 54:14-55:3. In other words, it seems that Plaintiffs' goal is to suggest that SAP engaged in lobbying activities for some improper purpose. But the *Noerr–Pennington* doctrine protects "parties who petition the government for governmental action favorable to them[, who] cannot be prosecuted under the antitrust laws even though their petitions are motivated by an anticompetitive intent." *Video Int'l Prod., Inc. v. Warner-Amex Cable Commc'ns, Inc.*, 858 F.2d 1075, 1082 (5th Cir. 1988); *see also Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 859 (5th Cir. 2000) (stating that *Noerr–Pennington* "confers immunity to private

individuals seeking anti-competitive action from the government"). The Court should restrict Plaintiffs from weaponizing constitutionally protected activities at trial, including allegations outside the scope of their complaint that have no bearing on any issue in this case. *Simpleair, Inc. v. Google Inc.*, No. 2:14-cv-0011-JRG, ECF 325 at 5 (E.D. Tex. Oct. 6, 2015) (granting motion *in limine* that states "[n]o evidence or argument about the defendants' patent lobbying efforts or corporate views and policies on patents"); *Boone v. Redevelopment Agency*, 841 F.2d 886, 894 (9th Cir. 1988) ("In order not to chill legitimate lobbying activities, it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr-Pennington* protections do not apply."); *Eaton v. Newport Bd. of Educ.*, 975 F.2d 292, 297-99 (6th Cir. 1992) (holding that *Noerr–Pennington* barred suit premised on defendants' "public lobbying on behalf of their position").

### IV. MOTION *IN LIMINE* NO. 4: Exclude all evidence, testimony, opinions, and arguments concerning financials or product usage that are unaccused or do not form the basis of Mr. Jim Bergman's conclusions.

The Court should prohibit any evidence, argument, or opinions on SAP's global financials or product usage, which do not form the basis of Mr. Bergman's damages report. In proffering his damages report, Mr. Bergman relies on three industry experts—Mr. Dieter Hotz, Mr. Stan McClellan, and Dr. Richard Marshall. Ex. 9 (Bergman Rpt.) ¶ 9. Of those, Dr. Marshall recites SAP's worldwide customer subscriptions and revenues, which do not form the basis of Mr. Bergman's ultimate damages opinion. In particular, Dr. Marshall refers to "the approximate number of licensed customers worldwide" on an annual basis from 2010 to 2019. Ex. 5 ¶ 84. In the next paragraph, Dr. Marshall discusses SAP's approximately 29,000 cloud customers, across SAP's entire Business Technology Platform. *Id.* ¶ 85. Then, he discusses *global* SAP HANA revenues in 2012 and 2013 (*id.* ¶ 87), *global* SAP Cloud revenue (including numerous unaccused products and features) from 2012 to 2024 (*id.* ¶ 88), and finally compares that *global* Cloud revenue by year to SAP's *total worldwide* revenues in a chart showing how even the entire global

Cloud revenues pale in comparison to what SAP earns (*id.* ¶ 89). Mr. Bergman does not rely on this information anywhere in his report.

Despite Plaintiffs' injection of unrelated and unaccused product usage and revenue, Mr. Bergman does use that information from Dr. Marshall's report to form his opinion. Therefore, global SAP product usage and revenue, untethered from any relevant issue and not forming the basis of Mr. Bergman's damages opinion, are irrelevant and inadmissible. Fed. R. Evid. 401, 402; *Huffman v. Turner Indus. Grp., L.L.C.*, 2013 WL 2297206, at *4 (E.D. La. May 24, 2013) (excluding a study because the plaintiff's expert did not rely on the study and stating "for the study to aid the jury in evaluating [the expert's] opinion, he would have had to rely on the study in forming his opinion"); *Dr.'s Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 878 F. Supp. 884, 888 (E.D. La. 1995) ("Because [the expert] did not base his decision on any documents but only on what the SMA president informed him, the Court finds that the probative value of the documentary evidence in regard to patient quality complaints at Doctor's Hospital would be substantially outweighed by the prejudice of these documents."). In fact, the admission of any such evidence presents the risk of prejudicing SAP by portraying it as a large company. The jury may believe that because of SAP's size, SAP is inherently wrong or unethical; could render a verdict to punish SAP rather than issue an award relating to infringement; or assume that Plaintiffs' damages ask is reasonable solely because of SAP's worldwide revenue and customer base. Any such implication would be improper and conflict with the Court's standard MILs. *See supra* Section III.B.

V.  **MOTION *IN LIMINE* NO. 5: Exclude all evidence, testimony, argument, or suggestion regarding the PTAB's IPR decisions about discretionary denial and settled expectations.**

Plaintiffs should not be permitted to present any evidence or refer to the Patent Trial and Appeal Board's IPR decisions about its discretionary denial of petitions regarding U.S. Patent Nos.

9

6,889,244; 7,313,575; and 7,152,182.[3] In denying institution, the PTAB concluded, in relevant part, that "the challenged patents have been in force for over 17 years, creating strong settled expectations." Ex. 10 (IPR Discretionary Denial) at 2. The Court's MIL No. 6 precludes parties from "introducing evidence, testimony, or argument concerning the [PTAB], *inter partes* review, the Smith-Leahy America Invents Act, or any alternative structure that does not relate directly to an Article III trial in a district court." Ex. 7 at 2. However, the Court's MIL No. 6 does not expressly bar argument or evidence based on the PTAB's reasoning, such as "settled expectations," which Plaintiffs may use to bolster the validity of the Asserted Patents. The concept of "settled expectations" is relevant only to the PTAB's discretionary decision whether to institute review, not to the substantive question of patent validity.

Therefore, in addition to the strictures of the Court's MIL No. 6, Plaintiffs should also be precluded from referencing recent PTAB developments based on settled expectations. *See, e.g.*, *Dabico Airport Sols. Inc. v. AXA Power ApS*, IPR2025-00408, Paper 21 at 2 (June 18, 2025) (one of the first issued discretionary denials based on settled expectations). In particular, the Court should prohibit Plaintiffs from introducing evidence or suggesting that the Asserted Patents are not invalid because there are "settled expectations" simply because of their age, even if the outcome of IPRs is not directly referenced. Permitting such references would risk misleading the jury into believing that the age of a patent is a defense to invalidity (which it is not), creating confusion about the legal standards that the jury must apply. Therefore, under Federal Rule of Evidence 403, any marginal probative value that Plaintiffs may contrive would be substantially outweighed by any such evidence because that evidence would result in the "danger of confusion, unfair prejudice, and unnecessary waste of time." *VARTA Microbattery GmbH v. Audio P'ship LLC*, No. 2:21-CV-

---

[3] Any reference to U.S. Patent No. 7,936,738 should also be prohibited because it was voluntarily dismissed (without objection) based on art not being used in this case. Ex. 11 (SAP's Motion to Terminate IPR) at 3.

10

00400-JRG-RSP, ECF 207 at 3 (E.D. Tex. Aug. 11, 2023) (citing Fed. R. Evid. 403); *see also GREE, Inc. v. Supercell Oy*, 2021 WL 1669800, at *2-3 (E.D. Tex. Apr. 28, 2021) (excluding reference to IPRs because "there is [an] overwhelming risk of jury confusion, waste of time, and unfair prejudice by admitting all of this evidence").

## VI. CONCLUSION

Based on the foregoing, SAP respectfully requests that the Court grant its motions *in limine*.

| | |
|---|---|
| Dated: July 28, 2025 | Respectfully submitted,<br><br>*/s/ Michael Bittner*<br>Thomas M. Melsheimer<br>State Bar No. 13922550<br>tmelsheimer@winston.com<br>M. Brett Johnson<br>mbjohnson@winston.com<br>State Bar No. 790975<br>Michael Bittner<br>State Bar No. 24064905<br>mbittner@winston.com<br>Patrick Clark<br>State Bar No. 24115706<br>pclark@winston.com<br>Samuel Riebe<br>State Bar No. 24136101<br>sriebe@winston.com<br>Thanh D. Nguyen<br>State Bar No. 24126931<br>tdnguyen@winston.com<br>**WINSTON & STRAWN LLP**<br>2121 N. Pearl St., 9th Floor<br>Dallas, TX 75201<br>Tel.: (214) 453-6500<br><br>**ATTORNEYS FOR SAP AMERICA, INC. and SAP SE** |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served by email on all counsel of record on July 28, 2025.

*/s/ Michael Bittner*
Michael Bittner

████████████████████████████

████████████████████████████████

████████████████████████████████
██

*/s/ Michael Bittner*
Michael Bittner

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(h), the undersigned counsel certifies that on July 28, 2025, counsel for SAP conferred with counsel for Plaintiffs. The parties agree to SAP's MIL No. 2. Plaintiffs oppose the other motions *in limine*.

*/s/ Michael Bittner*
Michael Bittner

13